GRAND CENTRAL ART GALLERIES, INC., Appellant, v PAUL MILSTEIN et al., Respondents.

First Department, October 19, 1982

APPEARANCES OF COUNSEL

*Donald T. MacNaughton* of counsel (*Daniel B. Rubock* with him on the brief; *White & Case,* attorneys), for appellant.

*Charles G. Moerdler* of counsel (*Brian M. Cogan* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for respondents.

MURPHY, P. J.

Plaintiff, Grand Central Art Galleries, Inc., is a domestic corporation formed under the former Stock Corporation Law. In its certificate of incorporation, plaintiff lists its name as "Grand Central Art Galleries, Inc." Even though the plaintiff was formed under the Stock Corporation Law, plaintiff's letterhead reads as follows: "GRAND CENTRAL ART GALLERIES, INC. A non-profit organization founded in 1922 and operated solely in the interests of the American artist."

Plaintiff's parent, the Painters and Sculptors Gallery Association, Incorporated (P&S), was formed under the Membership Corporations Law, the predecessor to the Not-For-Profit Corporation Law. P&S owns all of plaintiff's outstanding shares. Plaintiff's director, James Cox, states that the plaintiff and P&S "have the same boards of directors or trustees, they have the same officers and they hold joint meetings." Cox further states that plaintiff has always referred to itself as a "non-profit organization" and has never claimed that it was organized under the "Not-For-Profit Corporation Law". He maintains that the plaintiff's "description as a 'not-for-profit corporation' in the Complaint was meant in the colloquial sense of non-profit, to describe its mission to benefit the American artist."

In 1965, plaintiff entered into a lease with the prior owner of the Biltmore Hotel. That lease provided for an annual rental of $32,000. An extension agreement, signed with the prior owner in 1971, raised the annual rental to $35,000. In 1979, plaintiff signed a second lease extension with the present owner, defendant Builtland Partners. The second lease extension provided for an annual rental of $105,000. The plaintiff's correct incorporated name appears in each of these three agreements.

In the middle of 1981, Builtland began to convert the Biltmore Hotel from "hotel" to "commercial" occupancy. Shortly after this conversion began, the plaintiff removed itself from the Biltmore and it brought this action based upon a constructive eviction. The answer raised various defenses including one founded upon the claim that plain-

tiff had misrepresented that it was organized under the Not-For-Profit Corporation Law.

More specifically, the defendants rely upon an affidavit from defendant Philip Milstein, a partner in Builtland. To the extent here relevant, Milstein states: "In June, 1979, Builtland amended and extended plaintiff's lease for certain commercial space at the Biltmore. The then existing lease would otherwise have expired on February 29, 1980. That extension, and particularly the terms thereof, was, in large part at least, based upon the representation of plaintiff that it was and is a bona fide New York not-for-profit corporation and was in compliance with law. Apparently, that was not and is not correct."

The defense attorney also stresses that, in the complaint, the plaintiff states that it is a "not-for-profit corporation". He further emphasizes that, upon a prior motion in this action, plaintiff's attorney stated that plaintiff is a "not-for-profit corporation incorporated under the laws of this state." The defense attorney contends that plaintiff has violated section 130 (subd 1, par [b]) of the General Business Law because it did not set forth its full "name or designation" in its certificate of incorporation. Additionally, he claims that plaintiff violated section 130 (subd 2, par [b]) of the General Business Law insofar as that section encompasses section 301 (subd [a], par [4]) of the Not-For-Profit Corporation Law. It is the defense's contention that plaintiff misrepresented its "purpose" under section 301 (subd [a], par [4]) of the Not-For-Profit Corporation Law by stating it had a nonprofit status. Based upon both of these violations, defendants argue that plaintiff is prohibited from maintaining this action against them by reason of subdivision 9 of section 130 of the General Business Law.

Upon defendants' motion to dismiss under CPLR 3211 (subd [a]) and subdivision 9 of section 130 of the General Business Law, Special Term found that an issue existed as to whether plaintiff misrepresented its corporate status. The court held the motion in abeyance and referred that issue to a special referee to hear and report with recommendations.

■ The first question presented upon appeal is whether the order directing a reference is appealable at this time. CPLR 5701 (subd [a], par 2, cl [v]) provides:

"(a) Appeals as of right. An appeal may be taken to the appellate division as of right in an action, originating in the supreme court or a county court * * *

"2. from an order not specified in subdivision (b), where the motion it decided was made upon notice and it * * *

"(v) affects a substantial right".

The instant order comes within the purview of CPLR 5701 (subd [a], par 2, cl [v]). The motion was made upon notice. Furthermore, the order affects a substantial right of plaintiff insofar as that party would be required thereunder to submit to a lengthy and expensive hearing. Therefore, the appellant has the right to appeal from the order of reference. (*Matter of Manufacturers Hanover Trust Co. v Postel*, 38 AD2d 808; *Candid Prods. v SFM Media Serv. Corp.*, 51 AD2d 943; *Drew Nat. Corp. v Goldstein*, 74 AD2d 771.) Thus, the present appeal will be considered upon the merits.

The second question presented is whether the plaintiff violated section 130 (subd 1, par [b]) of the General Business Law. With regard to this statute, the Law Revision Commission has made the following comment (McKinney's Session Laws of NY, 1978, p 1628): "The purpose of an assumed or fictitious name statute is to provide a public source of information to prevent fraud and deceit in business practices by identifying the owners of a business operated under an assumed or fictitious name (*Sheraton Corp. of America v. Kingsford Packing Co., Inc., supra,* 9 Cal. Law Rev. Comm. Report 635). It enables persons dealing with the business to know who will be responsible for liabilities incurred in the business (*Jenner v. Shope,* 205 N.Y. 66, 40 N Y Jur., Names § 26 [p. 490]) to protect persons giving credit in reliance on such name (*Zimmerman v. Erhard,* 83 N.Y. 74, *Wood v. Erie Railroad Co.,* 72 N.Y. 196, *Gay v. Seibold,* 97 N.Y. 472, *Donner v. Parker Credit Corp.* [N.J.] 76 A.2d 277, 42 A.L.R.2d 516, 522-3)".

■ The defendant's principal contention seems to be that plaintiff's letterhead is misleading. However, plaintiff's

incorporated name correctly appears in bold letters on the letterhead. That same incorporated name also appears in the original lease agreement and the two extension agreements. Moreover, defendants never state that they were unaware of the plaintiff's true identity. Therefore, we find no violation of section 130 (subd 1, par [b]) of the General Business Law.

The third question is whether plaintiff violated section 301 (subd [a], par [4]) of the Not-For-Profit Corporation Law. As was mentioned above, defendant Milstein states that plaintiff made the representation that it was a "Not-For-Profit Corporation" at the time the second extension was executed. Milstein further avers that, to a large part, the terms of the second extension agreement were based upon plaintiff's representation.

Defendant Milstein does not indicate whether the "representation" was written or oral. In the absence of any specificity on that point, we must infer that Milstein and the other defendants were allegedly misled by the letterhead. In small print under its corporate name, plaintiff refers to itself as a "non-profit organization". Defendants allege that this phrase was deceitfully used by plaintiff to mislead the defendants and others.

Despite this charge, defendants do not submit any proof to demonstrate that plaintiff is operating "at" or "for" a profit. Although plaintiff was formed under the Stock Corporation Law, it may, in fact, be operating on a non-profit basis. Plaintiff's director, Cox, does not squarely address this issue but he intimates that plaintiff is operated in the same nonprofit manner as its parent. For the following reasons, it is unnecessary for us to make a factual determination in that matter.

The phrase "non-profit organization" clearly does not form part of the corporate name on the letterhead. The phrase, set in small print, unmistakably forms part of the short descriptive history of the plaintiff. Thus, even if plaintiff is, by incorporation and practice, a "for-profit" corporation, the fact remains that its corporate name on the letterhead does not contain any phrase suggesting an unauthorized purpose. Hence, there was no technical viola-

tion of section 301 (subd [a], par [4]) of the Not-For-Profit Corporation Law.

In addition, it should be emphasized that Milstein never stated he or the other defendants were mislead by the letterhead or any other representation of the plaintiff. The facts show that Builtland actually raised plaintiff's rent in the second lease extension from $35,000 to $105,000 per year. Upon that state of affairs, it is disingenuous for defendants to claim that plaintiff was given some type of special treatment because it represented itself to be a "Not-For-Profit Corporation".

The fourth question presented is whether plaintiff is precluded from bringing this action because it used the phrase "Not-For-Profit Corporation" on two occasions in this proceeding. There is no proof in the record that, prior to this suit, plaintiff ever described itself as, or represented itself to be, a "Not-For-Profit Corporation". Director Cox emphatically denied that his corporation has ever done so. Consequently, the use of that phrase in this case seemingly must be attributed to either an erroneous or a colloquial use of language by plaintiff's attorney. Upon an appropriate motion, that misleading and ambiguous phrase may be stricken from the complaint.

Accordingly, the order of the Supreme Court, New York County (GREENFIELD, J.), entered March 19, 1982, directing a reference to determine the nature of plaintiff's corporate status, should be reversed, on the law, and the motion to dismiss should be denied, with costs.

CARRO, MARKEWICH, BLOOM and LYNCH, JJ., concur.

Order, Supreme Court, New York County, entered on March 19, 1982, unanimously reversed, on the law, and the motion to dismiss denied. Appellant shall recover of respondents $50 costs and disbursements of this appeal.