[627 NYS2d 629]

New York State Crime Victims Board, Respondent, v Jack H. Abbott et al., Defendants, and George Heath, Appellant and Third-Party Plaintiff-Appellant. Time Warner Inc. et al., Third-Party Defendants-Respondents.

First Department, June 1, 1995

**APPEARANCES OF COUNSEL**

*George Heath,* appellant *pro se.*

*Judith T. Kramer* and *Joel Graber* of counsel, New York City *(Dennis C. Vacco, Attorney-General,* attorney), for New York State Crime Victims Board, respondent/third-party defendant-respondent.

*Philip Pierce,* New York City, for Time Warner Inc., and others, third-party defendants-respondents.

**OPINION OF THE COURT**

Tom, J.

This appeal addresses the manner in which the New York State Crime Victims Board (the Board) is obligated to dispose of the funds collected pursuant to Executive Law § 632-a after the United States Supreme Court declared the law unconstitutional *(Simon & Schuster v Members of N. Y. State Crime Victims Bd.,* 502 US 105).

Executive Law § 632-a (familiarly known as the "Son of Sam" law) provided that any person or legal entity contracting with an accused or convicted person for the production of a book or other work with respect to the reenactment or depiction of the crime is to submit a copy of the contract to the Board as well as any income owing to the person so accused or convicted or his/her representatives. The Board was then required to deposit the monies collected in an escrow account for the benefit of any victim, or legal representative of any victim, "only if such accused person is eventually convicted of the crime and provided that such victim, within five years of the date of the establishment of such escrow account, brings a civil action in a court of competent jurisdiction and recovers a money judgment for damages against such person or his representatives" (Executive Law § 632-a [1]). After the five-year period runs and no actions are pending against the convicted person, the monies are to be immediately paid over to that individual.

The "Son of Sam" law was enacted in response to the highly publicized, brutal "Son of Sam" killings which occurred in and around the New York City area during the summer of 1977. David Berkowitz, who was eventually charged with and convicted of the killings, apparently stood to profit a great deal of money from his notoriety. The author of the bill, Senator Emanuel R. Gold, in elucidating on the reasons behind the statute, stated: "It is abhorrent to one's sense of justice and decency that an individual * * * can expect to receive large sums of money for his story once he is captured—while five people are dead [and] other people were injured as a result of his conduct. *This bill would make it clear that in all criminal situations, the victim must be more important than the criminal."* (Mem of Senator Emanuel R. Gold, 1977 Legis Ann, at 267; emphasis added.)

Nevertheless, the United States Supreme Court, in December 1991, declared the statute unconstitutional as inconsistent with the United States Constitution's First Amendment right of free speech. The Supreme Court held, *inter alia,* that New York improperly "singled out speech on a particular subject for a financial burden that it places on no other speech and no other income" and found that although New York's interest in compensating victims "is a compelling one * * * the Son of Sam law is not narrowly tailored to advance that objective." *(Simon & Schuster v Members of N. Y. State Crime Victims Bd., supra,* at 123.)

At the time the Supreme Court handed down its decision, the Board maintained escrow accounts in connection with five convicted criminals: Jack Henry Abbott, concerning options to his book In the Belly of the Beast; Mark David Chapman, ex-Beatle John Lennon's killer, regarding an article written for People magazine; Henry Hill, concerning proceeds from a television interview, the book Wiseguy and the movie Goodfellas; John S. Wojtowicz, regarding royalties from the film Dog Day Afternoon; and Marco Sindona, regarding royalties from the book Power on Earth.

Although the Board was apparently ready to distribute the funds, the United States Supreme Court decision stripped the Board of the authority to do so. Neither the Board, nor the State of New York, has any claim to the funds.

In March 1992, the Board, seeking direction from the courts, commenced the underlying interpleader action pursuant to CPLR 1006 (f). The action seeks to gain judicial disposition of the various funds among a broad group of competing claimants which comprise victims, judgment creditors and the criminals themselves. Shortly after commencement of the action, George Heath (Heath), the appellant herein and one of the claimants to funds held with respect to John S. Wojtowicz, initiated a third-party action against Time Warner Inc. and several of its officers (to be referred to collectively herein as Time Warner) as well as the Board.

On March 17, 1993, the IAS Court referred all of the claims[1] to a Special Referee to hear and report on the accounts. The court rejected Heath's argument that the money should be returned to its source. Justice Lebedeff also granted the

---

1. The claim to the funds held for Mark David Chapman was settled as Chapman's lawyer asserted the only claim and Chapman did not object to the funds' release to that party.

Board's motion, and Time Warner's cross motion, to dismiss Heath's third-party complaint as abandoned. Since Heath is now the sole appellant, some background history as to his involvement in this action is instructive.

On August 31, 1972, Wojtowicz and two confederates attempted to rob a Brooklyn, New York, branch of the Chase Manhattan Bank in order to acquire funds so that Wojtowicz' homosexual lover could have a sex-change operation. Shortly after their arrival at the bank, one of Wojtowicz' accomplices fled the scene, but the remaining two bandits continued the robbery. Before being able to make good their escape, however, the police arrived and laid siege to the bank, whereupon Wojtowicz and the accomplice took several hostages. After lengthy negotiations, the two robbers were taken to John F. Kennedy International Airport where a plane was allegedly waiting to take them to an undisclosed destination.

Upon their arrival at the airport, FBI agents moved in, Wojtowicz was captured, his companion was killed and the hostages were freed. The foregoing events were subsequently depicted in the highly successful film Dog Day Afternoon, which was released in 1975.

Following his capture, Wojtowicz was indicted by a Federal Grand Jury on several counts of robbery and conspiracy and was sentenced to 20 years' imprisonment after pleading guilty to one count of armed robbery.[2] While incarcerated, Wojtowicz became involved with a fellow prisoner, Heath, and although the extent of their relationship is unclear, Heath, at a minimum, has acted zealously as Wojtowicz' jailhouse lawyer for many years.

In the early 1970's, Wojtowicz sold the rights to his story to Artists Entertainment Complex, Inc. (AEC), a now-defunct production company. Wojtowicz was paid several thousand dollars and was allegedly promised a percentage of the gross proceeds from the anticipated movie. Heath avers that AEC agreed, with Wojtowicz' consent, to pay him a percentage of the proceeds and in 1976, Wojtowicz executed a lien whereby he assigned 16⅔% of all monies escrowed on his behalf from the movie proceeds to Heath.

AEC subsequently contracted with Warner Brothers to distribute the film and to make the necessary monetary disburse-

2. *See, Wojtowicz v United States,* 550 F2d 786, *cert denied* 431 US 972, for a narrative of the facts and subsequent procedural aspects of Wojtowicz' criminal prosecution.

ments. Warner Brothers, however, refused to release any royalties to Wojtowicz because AEC never executed a contract to that effect.

Heath, acting on behalf of Wojtowicz, filed suit in both the New York State Supreme Court and the United States District Court for the Southern District of New York against AEC and others asserting that Wojtowicz had not received the 1% of the royalties to which he was entitled. In August 1976, AEC's executive officers, in an interview published in Playboy magazine, admitted that AEC had agreed to pay Wojtowicz a percentage of the profits from the film. As a result of those admissions, Wojtowicz retained William J. O'Donnell, Esq. (O'Donnell) to commence an action against AEC and Time Warner for breach of contract.

The parties thereafter entered into a written Settlement Agreement dated May 7, 1977 pursuant to which AEC agreed to pay 1% of the net profits from the film to Wojtowicz who, in turn, assigned 33⅓% to O'Donnell for legal fees, 10% to O'Donnell to hold in escrow for Heath and 6⅔% directly to Heath. However, before Warner Brothers distributed the funds, Executive Law § 632-a was enacted and, thus, Warner Brothers was constrained to turn the funds over to the Board.

In the meantime, Heath had commenced numerous State and Federal actions seeking a declaration of his rights, title and interest in the profits from the film, and in an effort to collect his share of the royalties, arguing, *inter alia:* that Executive Law § 632-a was unconstitutional; that it could not be applied retroactively to the funds; and that it did not apply to his portion of the funds. These State and Federal actions were all dismissed on various grounds.

Heath went on to file so many duplicitous, vexatious actions that the District Court for the Southern District issued a permanent injunction, dated June 18, 1986, which permanently enjoined Heath and Wojtowicz from commencing any new actions in Federal court against any of the defendants concerning the royalties from Dog Day Afternoon. With regard to State, county, municipal or other nonFederal courts, agencies, tribunals or forums, the injunction required them to attach a statement detailing their litigation history, as well as a copy of the order granting the injunction. Heath, however, did not comply with the injunction with regard to the papers filed in the instant action.

In light of the United States Supreme Court decision invali-

dating Executive Law § 632-a and the subsequent commencement of the interpleader action, Heath apparently regained his litigious vigor, notwithstanding the Federal court injunction. Initially, Heath moved by order to show cause dated July 28, 1992, for an order reinstating an earlier action that had reached final judgment in the New York State Supreme Court, New York County, before Justice Egeth on October 28, 1981. Justice William J. Davis denied the motion as being devoid of merit as well as for Heath's failure to comply with the Federal injunction.

Heath, in addition to the underlying third-party action, commenced an action in the United States District Court for the Southern District of New York asserting the same basic allegations and causes of action interposed numerous times before. Motions to dismiss the complaint by the defendants are now pending before District Judge Sprizzo.

■ In the matter before us now, Heath makes a number of scattershot, meritless arguments. Heath first contends that the Board was obligated, once the statute was declared unconstitutional, to return the money to the various sources from which it originated. However, we find that to direct the Board to return the money to the different sources would not serve a legitimate purpose and would engender a situation fertile for the filing of numerous, additional lawsuits by claimants against the various entities resulting in the expenditure and waste of additional time, expenses and judicial resources. This would be contrary to the intended goal of the trial courts to expeditiously and expediently resolve litigations and to avoid delay and multiplicity of lawsuits whenever possible. We also find that since all of the necessary parties with claims to the funds are within the court's jurisdiction and since the IAS Court is the proper forum in which to resolve the competing claims, it was not an abuse of discretion to deny Heath's request to direct the return of the money to the payors.

Further, this Court will not ordinarily interfere with the discretion of the trial court in referring a matter to a Special Referee to hear and report *(Miller v Albertina Realty Co.,* 198 App Div 340, 342) and, in this case, we perceive no abuse of discretion as the court had before it five accounts and, at a minimum, 18 potential claimants. There is even the view that no appeal lies from an order directing a reference for a Referee to hear and report because it does not affect a substantial right *(Warner v Warner,* 88 AD2d 639 [2d Dept 1982]), although that is not the view in this Department *(General*

*Elec. Co. v Rabin,* 177 AD2d 354 [1st Dept 1991]; *Grand Cent. Art Galleries v Milstein,* 89 AD2d 178 [1st Dept 1982]) because "it would force one party or the other to submit to a lengthy expensive hearing" *(General Elec. Co. v Rabin, supra,* at 357). In this case, however, no such right is affected as the hearings have been very brief.

■ Likewise, Heath's argument that the IAS Court should have addressed his and Wojtowicz' counterclaims seeking indemnification from the Board on the theory that it knew or should have known that Executive Law § 632-a was unconstitutional is meritless. Heath, in making the foregoing argument, manages to ignore the fact that, until its invalidation in 1991 by the United States Supreme Court, Executive Law § 632-a was continually upheld by various State and Federal courts *(see, e.g., Matter of Children of Bedford v Petromelis,* 77 NY2d 713, *cert granted and judgment vacated* 502 US 1025; *Matter of Johnsen,* 103 Misc 2d 823). Since it is well settled that a public officer will not be held liable for enforcing a statute that is later found to be unconstitutional where that unconstitutionality was not plain *(Lemon v Kurtzman,* 411 US 192; *Hurd v City of Buffalo,* 41 AD2d 402, *affd* 34 NY2d 628), Heath's argument is untenable.

■ Lastly, the IAS Court properly dismissed Heath's third-party action. Initially, it must be noted that Heath defaulted on the motion to dismiss and has failed to offer any explanation or excuse, plausible or otherwise, for the default. In addition, it is clear, in view of Heath's long and somewhat remarkable history of litigation, that his incarceration did not impede him from fully and actively participating in this action. To the extent that Heath argues that the action was dismissed for lack of an index number, Heath could have had one assigned prior to the determination of his motion (CPLR 1101 [d]).

In any event, the Board moved to dismiss the third-party complaint on the merits, not on a technicality. The complaint interposes four causes of action: the first and second causes of action allege that Time Warner breached the Settlement Agreement, of which Time Warner was not a signatory, by turning the proceeds of the film over to the Board rather than to Wojtowicz; the third cause of action asserts that the Board was unjustly enriched by applying Executive Law § 632-a retroactively; and the fourth cause of action maintains that the Board should not have enforced the statute because it

knew or should have known that the statute was unconstitutional.

The first three causes of action were raised and rejected on the merits in prior, related litigation, either before Justice Wilk, Justice Egeth, District Judge Lowe, or some combination thereof, and are thus barred by res judicata *(see generally, Williams v Steinberg,* 211 AD2d 597; *Spectacolor Inc. v Banque Nationale,* 207 AD2d 726). The fourth cause of action, as already discussed, is devoid of merit.

Finally, Heath's contention that the IAS Court's decision to impose a $200 sanction upon him was improper is without merit as the $200, rather than a sanction appears to be nothing more than a normal assessment of costs.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Diane Lebedeff, J.), entered on January 18, 1994, referring to a Special Referee all claims relevant to funds held by plaintiff pursuant to Executive Law § 632-a with respect to John S. Wojtowicz, and dismissing defendant and third-party plaintiff George Heath's third-party complaint, is unanimously affirmed, without costs.

WALLACH, J. P., RUBIN and KUPFERMAN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered January 18, 1994, affirmed, without costs.