[807 NYS2d 114]

Salvatore Ciafone, Respondent, v Ibn Kenyatta, Appellant. Eliot Spitzer, as Attorney General of the State of New York, Intervenor-Respondent.

Second Department, December 19, 2005

## APPEARANCES OF COUNSEL

*Stevens, Hinds & White, P.C.,* New York City (*Lennox S. Hinds* of counsel), for appellant.

*Calano & Calano, LLP*, New York City (*Edward A. Frey* of counsel), for respondent.

*Eliot Spitzer, Attorney General*, Albany (*Wayne L. Benjamin* and *Dorothy E. Hill* of counsel), intervenor-respondent pro se in his statutory capacity pursuant to Executive Law § 71.

## OPINION OF THE COURT

S. MILLER, J.

Executive Law § 632-a, commonly known as the Son of Sam Law, broadly permits a crime victim to recover damages from his or her assailant. In this case, in 1974, the plaintiff Salvatore Ciafone (hereinafter the plaintiff), then a New York City Transit Authority police officer, was shot by the defendant, Ibn Kenyatta. In 2001, while incarcerated for his crimes, the defendant recovered more than $600,000 from a settlement of a medical malpractice action. The plaintiff was notified of this recovery and commenced this action as permitted by the Son of Sam Law. The questions presented on this appeal stem from the sequence of these events. The defendant argues that insofar as applied to his case, the Son of Sam Law violates the constitutional prohibition against ex post facto laws and the Contract Clause of the United States Constitution. The Supreme Court disagreed and denied his motion to dismiss the complaint. We affirm.

### I.

On January 30, 1974, the plaintiff observed the defendant attempt to jump a turnstile at the 149th Street IRT subway sta-

tion in the Bronx. In apprehending the defendant, a struggle ensued, and the plaintiff was knocked to the ground. The defendant wrested the plaintiff's service revolver and shot at the plaintiff six times; five of the shots hit the plaintiff in the legs. As a result of his injuries, the plaintiff could not return to work as a police officer for 10 months. The New York State Workers' Compensation Board determined that the plaintiff had lost 15% of the use of his right leg and 17 1/2% of the use of his left leg.

The defendant was tried and convicted of attempted murder and criminal possession of a weapon and, as modified on appeal, sentenced to an indeterminate term of 15 years to life in prison (*see People v Kenyatta,* 52 AD2d 783 [1976]). He has been incarcerated since January 1974.

In 2000 the defendant commenced a medical malpractice action against, among others, employees of the New York State Department of Correctional Services and various medical personnel, alleging that he was misdiagnosed and that his kidney failure went untreated, resulting in permanent disability and the potential need for a kidney transplant. That claim was ultimately settled in accordance with a January 2001 stipulation, pursuant to which the defendant was awarded, inter alia, a lump sum of $133,500 into a supplemental needs trust, and the sum of $500,000, to be deposited into his inmate account.

On November 15, 2002, pursuant to Executive Law § 632-a (2) (c), the New York State Crime Victims Board (hereinafter the Board) notified the plaintiff of the impending payment to the defendant. In or about January 2003, the plaintiff and his wife commenced this action against the defendant to recover damages arising from the 1974 shooting.

In lieu of serving an answer, the defendant moved to dismiss the complaint, contending, inter alia, that Executive Law § 632-a, as amended, violated the Ex Post Facto Clause of the United States Constitution (*see* US Const, art I, § 9), as the law afforded crime victims new rights to sue that did not exist at the time of his conviction, and that the statute violated the Contract Clause of the United States Constitution (*see* US Const, art I, § 10), as it impaired an existing contract between the defendant and the State of New York. The Supreme Court, among other things, denied the motion. We affirm.

## II.

### A.

The defendant argues that Executive Law § 632-a is unconstitutional in that it violates the Ex Post Facto Clause of the United States Constitution (*see* US Const, art I, § 9). Specifically, he contends that the law facilitates a kind of restitution which traditionally has been associated with punishment for crime. Thus, the defendant concludes, the statute, which imposes restitutionary sentences on those convicted of crimes, imposes further punishment upon convicted criminals after they have already been tried and convicted. This argument is without merit.

Like all laws enacted by the people through their elected representatives, Executive Law § 632-a is entitled to a presumption of constitutionality (*see Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443, 448 [2003]; *Cohen v State of New York*, 94 NY2d 1, 8 [1999]). Thus, the defendant bears a heavy burden in demonstrating that the law is unconstitutional.

Executive Law § 632-a was initially enacted to permit crime victims to recover any profits earned by a convicted defendant from the commission of the crime (*see New York State Crime Victims Bd. v Abbott*, 212 AD2d 22, 24 [1995]). A prior version of the statute limited victims to recovery of "profits from a crime," meaning property or income generated from the crime itself (Executive Law former § 632-a [1] [b]). However, that version was declared unconstitutional (*see Simon & Schuster, Inc. v Members of N.Y. State Crime Victims Bd.*, 502 US 105 [1991]). Thus, in 2001, the Legislature enacted the present statute to permit victims to bring an action within three years of the discovery of any "funds of a convicted person" (Executive Law § 632-a [3]). "Funds of a convicted person" are defined as "all funds and property received from any source by a person convicted of a specified crime" (Executive Law § 632-a [1] [c]).

In analyzing whether a civil statute constitutes an ex post facto law, the threshold issue is whether the law is penal in purpose or effect—that is, whether it was enacted with an intent to punish (*see Smith v Doe*, 538 US 84 [2003]). Even if the court finds that it was not intended to punish, a court must further determine whether the scheme of the statute is so punitive as to negate any presumption that is it civil in nature (*id.* at 92).

Contrary to the defendant's contentions, the Son of Sam Law does not evince an intent to punish. To begin with, the

categorization of a particular proceeding as civil or criminal " 'is first of all a question of statutory construction' " (*Kansas v Hendricks*, 521 US 346, 361 [1997], quoting *Allen v Illinois*, 478 US 364, 368 [1986]). Here, the statute is a part of the Executive Law, rather than the Penal Law, and thus is civil in nature (*Kansas v Hendricks, supra*). Moreover, the statute's "Declaration of policy and legislative intent" specifically states that the intent of the statute is to provide "aid, care and support" for crime victims (Executive Law § 620). The legislative memorandum similarly stated that the law is to "ensure that convicted criminals who have or gain the ability to pay are held financially accountable to their victims" (Governor's Mem approving L 2001, ch 62, 2001 NY Legis Ann, at 45).

Hence, given the construction of the statute, its purpose is to provide the opportunity for restitution to victims, not to impose punishment upon convicted criminals. Indeed, in light of the statutory construction and legislative history, only "the clearest proof" may be adduced to show that the statute is intended to be punitive and is therefore unconstitutional (*see Flemming v Nestor*, 363 US 603, 617 [1960]). The defendant has not demonstrated such clear proof.

The defendant's argument that restitution is akin to punishment is unavailing. That a law has some detrimental effect upon a particular group does not render punitive a law that is chiefly civil in nature. For example, in *De Veau v Braisted* (363 US 144, 160 [1960]), the United States Supreme Court found that a law prohibiting felons from working for waterfront unions was not an ex post facto law, stating:

> "The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession. . . . The proof is overwhelming that New York sought not to punish ex-felons, but to devise what was felt to be a much-needed scheme of regulation of the waterfront, and for the effectuation of that scheme it became important whether individuals had previously been convicted of a felony."

Similarly, the strictures imposed upon individuals under Executive Law § 632-a may, as a by-product of the legislation, result

in a consequence upon those convicted of crimes, but those strictures chiefly advance a separate legislative aim, i.e., providing the opportunity for restitution to crime victims. That convicts are adversely affected does not change the chief thrust of the law.

## B.

The foregoing demonstrates that the Son of Sam Law was not intended to punish convicted felons. Nevertheless, we must now determine if the statute is punitive in effect. In *Kennedy v Mendoza-Martinez* (372 US 144 [1963]), the Supreme Court enunciated seven indicators of whether a statute is punitive in effect: (1) whether the sanction involved an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned (*id.* at 168-169). We examine each of these factors seriatim.

1. Affirmative Disabilities or Restraints

Executive Law § 632-a does not impose any affirmative disabilities or restraints on the defendant. Rather, the statute merely permits a crime victim to sue his or her assailant for civil damages. This provision is no more punitive than the obligation imposed on any tortfeasor to pay compensatory damages to one whom he or she has injured (*see Sharapata v Town of Islip*, 56 NY2d 332 [1982]). Moreover, the statute does not involve an affirmative disability or restraint as that term is normally understood in the law (*see Hudson v United States*, 522 US 93, 104 [1997]). Indeed, the scheme imposed by the statute, under which a crime victim may recover compensatory funds, is "certainly nothing approaching the 'infamous punishment' of imprisonment" (*id.*, quoting *Flemming v Nestor, supra* at 617). To be sure, as the Attorney General correctly notes, the statute's effect is far less harsh than that imposed by other statutes that have been deemed nonpunitive (*see De Veau v Braisted, supra* at 160 [prohibiting felons from working for waterfront unions]; *Smith v Doe, supra*; *Doe v Pataki*, 120 F3d 1263 [1997], *cert denied* 522 US 1122 [1998] [requiring registration of convicted sex offenders]).

## 2. Historical Punishment

The defendant argues that the forfeiture of property has been regarded as punishment, and therefore, Executive Law § 632-a is punitive in nature. He is incorrect. The thrust of the Son of Sam Law is not to provide restitution to crime victims, but rather to provide the *opportunity* for restitution; recovery is not automatic. Indeed, the legislative history states that the statute "makes . . . meaningful amendments to ensure that victims of serious crimes have *every reasonable opportunity* to obtain financial compensation from the persons who committed crimes against them "(Governor's Mem approving L 2001, ch 62, 2001 NY Legis Ann, *supra* at 43 [emphasis added]) and that the law "give[s] crime victims and their families the tools they need to pursue justice" (*id.* at 45). Merely providing a mechanism through which a crime victim can pursue a money judgment is not historically regarded as punishment, particularly where the victim, after filing suit, must prove his or her claim by a preponderance of the evidence.

The cases upon which the defendant relies are inapposite. Each one, from other jurisdictions, holds that restitution is punitive where it is ordered by a court or assessed as part of a criminal judgment, and that it may not be imposed ex post facto (*see e.g. Spielman v State*, 298 Md 602, 471 A2d 730 [1984]; *Matter of Appeal in Maricopa County Juvenile Action No. J-92130*, 139 Ariz 170, 677 P2d 943 [1984]). Thus, for example, it would be improper for the defendant to summarily be found to owe restitution in a sum certain where such "punishment" was not theretofore adjudicated. In the instant case, however, the court did not order restitution. Nor could it do so, as the Son of Sam Law simply enables a crime victim to *seek* restitution from his attacker. Thus, in contrast to the cases cited by the defendant, no court has imposed restitution in this case— rather, the court has merely permitted the plaintiff to pursue recovery in accordance with the statute.

## 3. Scienter

Contrary to the defendant's claims, not all of the crimes specified in Executive Law § 632-a (1) (e), upon which a victim may sue for damages, require scienter. As the Attorney General correctly notes, criminally negligent homicide, which requires no scienter, is a "Specified crime" that triggers the operation of the statute (Executive Law § 632-a [1] [e] [i] [C]). Thus, the third indicator of a punitive statute militates against a finding that the Son of Sam Law is an ex post facto law.

## 4. Retribution and Deterrence

The defendant argues that the Executive Law promotes deterrence or retribution because the statute makes available to victims any money realized by an ex-inmate who has been released from custody and who is no longer on parole or probation, whenever the cause of action is based on conditions or events arising during imprisonment (*see* Executive Law § 632-a [1] [c] [iii] [A], [B]). Further, the defendant contends, an ex-offender may be re-imprisoned if he fails to report his available income to the Crime Victims Board; this provision, the defendant argues, is further evidence of the statute's retributive nature. Again, however, the defendant's arguments are without merit.

Despite the fact that the statute permits a crime victim to reach money that is available to the inmate, the statute permits the commencement of an action only within three years of discharge from state supervision, and only if the funds are derived from an award in a lawsuit where the cause of action accrued before the offender is released from prison, or before his parole ends (*see* Executive Law § 632-a [1] [c] [iii] [A]). As the Attorney General correctly points out, "this provision merely serves the stated legislative goal of ensuring that funds acquired by convicted persons while they are wards of the state are not shielded from recovery by crime victims in private damages actions."

Moreover, as noted above, the statute does not impose a fine, which could fairly be termed a retributive action. Rather, the statute simply allows an injured party an avenue through which to pursue compensation for an injury. Thus, the statute does not serve a retributive or deterrent effect so much as it assists victims in recovering compensation for their injuries. Indeed, it is difficult to understand how accrual of a cause of action *after* conviction of a crime could serve any deterrent effect. Similarly, it is difficult to assign deterrent effect to the statute where the cause of action may never even accrue at all—that is, where the inmate never receives funds sufficient to compensate his or her victim.

In any event, even if deterrence is, in fact, an objective of Executive Law § 632-a, "the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals' " (*Hudson v United States, supra* at 105, quoting *United States v Ursery,* 518 US 267, 292 [1996]).

## 5. Whether the Behavior is Already a Crime

As accurately noted by the Supreme Court, the fact that Executive Law § 632-a promotes a civil penalty for those already convicted of a crime does not lead inexorably to the conclusion that the statute is punitive. As other courts have noted, "that the Act may be 'tied to criminal activity' is 'insufficient to render the statut[e] punitive' " (*Kansas v Hendricks, supra* at 362, quoting *United States v Ursery, supra* at 292). Indeed, as noted above, other statutes that impose greater penalties than Executive Law § 632-a have been deemed by courts to be nonpunitive (*see De Veau v Braisted, supra* at 160; *Smith v Doe, supra*; *Doe v Pataki, supra*).

*Department of Revenue of Mont. v Kurth Ranch* (511 US 767 [1994]), upon which the defendant relies, is readily distinguishable. In that case, the Supreme Court found that a state law imposing a tax on possession and storage of dangerous drugs collected after fines and forfeitures had been satisfied, generated government revenues and therefore was actually a second punishment imposed by the State in violation of the Double Jeopardy Clause (*id.* at 781). On the other hand, as noted, supra, the Son of Sam Law merely allows for the possibility of restitution by a private party; it is not punishment by the State to raise revenue.

6. Narrowly Drawn and Rationally Connected

As the Supreme Court of the United States has noted, "[t]here can be little doubt, on the other hand, that the State has a compelling interest in ensuring that victims of crime are compensated by those who harm them" (*Simon & Schuster, Inc. v Members of N.Y. State Crime Victims Bd., supra* at 118). The Son of Sam Law advances that interest and is rationally connected to the State's objective, as it provides a mechanism for compensation of crime victims.

Additionally, the Son of Sam Law is not excessive in relation to its assigned purpose. As the plaintiff correctly notes, and as has been noted, supra, the statute does not result in an automatic forfeiture of any funds; instead, the statute merely allows a crime victim to seek redress for the injury that his assailant inflicted upon him. Whether the victim eventually succeeds in receiving redress is left to the judgment of a jury.

It is further noted that almost all legislation entails classifications, for one purpose or another, that work to the advantage or disadvantage of the affected groups (*see Romer v Evans*, 517 US 620, 632 [1996]). These classifications do not, in and of themselves, render a law unconstitutional. Rather, to survive

constitutional scrutiny, a law need have only a rational relationship to a legitimate state interest; this is so even if the law appears unwise or works to the detriment of one group or the other (*id.*). Thus, the defendant must demonstrate that the effect of Executive Law § 632-a is not merely unwise or unfair but serves no legitimate governmental purpose. The defendant has failed to so demonstrate.

## III.

■ The defendant also argues that the Son of Sam Law impinges upon his rights guaranteed by the Contract Clause of the United States Constitution (*see* US Const, art I, § 10). Referring to his contractual stipulation with the State settling his malpractice claim, the defendant argues that Executive Law § 632-a impermissibly expands the property that was subject to attachment for a debt not existing at the time of the contract, and permits the plaintiff to satisfy any judgment out of that property. The defendant argues that insofar as the Son of Sam Law exposes his medical malpractice recovery to the plaintiffs' claims, it interferes with the provision in the stipulation which grants him the exclusive use of the funds deposited into his inmate account "for the limited purpose of satisfying any liens or judgments that may exist against [his] Inmate account. . . . Upon satisfaction of such liens and judgments, [the defendant] may withdraw all remaining funds for his sole and exclusive disposal." There is no merit to this argument.

Article I (§ 10 [2]) of the US Constitution provides: "No state shall . . . pass any . . . Law impairing the Obligation of Contracts." The Supreme Court has set forth criteria for determining when there is a violation of the Contract Clause: "Generally, we first ask whether the change in state law has operated as a substantial impairment of a contractual relationship . . . This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial" (*General Motors Corp. v Romein*, 503 US 181, 186 [1992] [internal quotation marks and citations omitted]). Even if the law substantially impairs a contract, however, it will not be deemed unconstitutional where it is justified by "a significant and legitimate public purpose . . . such as the remedying of a broad and general social or economic problem" (*Energy Reserves Group, Inc. v Kansas Power & Light Co.*, 459 US 400, 411-412 [1983]; *see Crane Neck Assn. v New York City/Long Is.*

*County Servs. Group*, 61 NY2d 154, 167 [1984], *cert denied* 469 US 804 [1984] ["the State may impair . . . contracts by subsequent legislation or regulation so long as it is reasonably necessary to further an important public purpose and the measures taken that impair the contract are reasonable and appropriate to effectuate that purpose"]). Moreover, to show that a statute substantially impairs a contractual relationship, a plaintiff must show that the legislature has thwarted his legitimate contractual expectation (*see Energy Reserves Group, Inc. v Kansas Power & Light Co., supra* at 416; *Sal Tinnerello & Sons, Inc. v Town of Stonington*, 141 F3d 46, 53 [1998], *cert denied* 525 US 923 [1998]).

To begin with, the Son of Sam Law does not operate upon the contract itself, but only against the property that was the subject of the stipulation settling the defendant's malpractice claim. The law therefore does not impair the performance of the contract, especially where, as here, the government actually did perform its obligations under the contract by depositing the money into the plaintiff's inmate account (*see Opgal, Inc. v Burns*, 20 Misc 2d 803 [1959]). Rather, the law merely exposes that malpractice recovery to the plaintiff if he or she proves his or her right to recover damages from the defendant.

In any event, assuming that Executive Law 632-a impairs the settlement contract between the plaintiff and the State, the impairment was reasonable and necessary to accomplish a legitimate public purpose—namely, the recompense of crime victims, which, as noted, *supra,* has been held to be a compelling state interest (*see Simon & Schuster, Inc. v Members of N.Y. State Crime Victims Bd., supra*; *Condell v Bress*, 983 F2d 415 [1993], *cert denied* 507 US 1032 [1993]).

## IV.

As the foregoing demonstrates, the defendant's constitutional arguments are plainly lacking in merit. Accordingly, the order denying his motion to dismiss the complaint should be affirmed.

COZIER, J.P., MASTRO and SKELOS, JJ., concur.

Ordered that the order is affirmed, with costs.