[927 NYS2d 92]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WESLEY FOSTER, Appellant.

Second Department, June 28, 2011

**APPEARANCES OF COUNSEL**

*Legal Aid Society*, New York City (*Laura Boyd* and *Steven Banks* of counsel), for appellant.

*Charles J. Hynes*, *District Attorney*, Brooklyn (*Leonard Joblove* and *Victor Barall* of counsel), for respondent.

**OPINION OF THE COURT**

ENG, J.

In July 2006 the Legislature amended Criminal Procedure Law § 530.12 (5) to increase the maximum duration of a final order of protection issued in favor of the victim of a felony family offense from five years to eight years. The clear purpose of the amendment was to enhance the protection available to victims of domestic violence. On this appeal, we are asked to determine whether the duration of the final order of protection issued in favor of the victim should be reduced from eight years to five years because the subject offenses were committed before the amendment of CPL 530.12 (5) became effective. For the reasons which follow, we conclude that the issuance of an order of protection is not a form of punishment, and that there is no constitutional impediment to the application of the 2006 amendment extending the maximum duration of final orders of protection issued pursuant to CPL 530.12 (5) to crimes committed before its effective date.

Between July 5, 2004, and December 23, 2004, the defendant assaulted his former girlfriend on several occasions, broke into her apartment, and repeatedly harassed and stalked her in violation of temporary orders of protection. For these acts, the defendant was charged in two separate indictments with multiple crimes, including burglary in the second degree, attempted assault in the third degree, criminal contempt in the first degree, criminal contempt in the second degree, aggravated harassment in the second degree, stalking in the fourth degree, and menacing in the second degree. The two indictments were consolidated on October 24, 2005. Shortly thereafter, on November 16, 2005, the defendant agreed to plead guilty to burglary in the second degree, criminal contempt in the first degree, and criminal contempt in the second degree, in full satisfaction of the consolidated indictment. In exchange for the defendant's plea, the Supreme Court promised him that if he completed a Treatment Alternatives to Street Crimes drug program, it would vacate his plea to burglary in the second degree, and sentence him to concurrent terms of five years' probation for criminal contempt in the first degree and criminal contempt in the second degree. However, the Supreme Court warned the defendant that if he failed to complete drug treatment, his plea to burglary in the second degree would stand, and he would be sentenced to a determinate term of seven years of imprisonment and a period of five years of postrelease supervision for that offense.

During the course of the ensuing plea allocution, the defendant acknowledged that he understood that, by pleading guilty, he was giving up his right to a jury trial, his right to cross-examine witnesses, and his right to testify on his own behalf if he wished to do so. Immediately after the defendant acknowledged that he was giving up these rights, the Supreme Court briefly addressed the issue of a waiver of the right to appeal, explaining that "if you were tried and convicted, you would have the right to appeal the conviction, but you're giving up that right now." Continuing, the Supreme Court asked the defendant whether he was "willing to give up all those rights and any other rights you have and plead guilty now?," and he answered "yes." The defendant then admitted that, nearly one year earlier, on November 23, 2004, he had "knowingly entered unlawfully and remained unlawfully" in the victim's dwelling, that he was aware that she had obtained an order of protection against him, and that he had violated that order of protection.

The defendant failed to complete a drug treatment program despite two opportunities to do so. After the defendant absconded from the second treatment facility in which he had been placed, he remained at large for over a year until he was returned to court on a bench warrant on December 15, 2008. When the defendant subsequently appeared for sentencing on April 22, 2009, the Supreme Court sentenced him to concurrent terms of imprisonment of five years for burglary in the second degree, 2 to 4 years for criminal contempt in the first degree, and one year for criminal contempt in the second degree. The Supreme Court also imposed a five-year term of postrelease supervision. At the end of the sentencing proceeding, the Supreme Court informed the defendant that it was issuing a full order of protection which would be in effect for 13 years, and would bar him from contact with the victim.

On appeal, the defendant challenges only the duration of the final order of protection issued in favor of the victim at sentencing. He contends that the Supreme Court lacked the authority to issue an order of protection which would remain in effect for eight years beyond the expiration of his five-year determinate term of imprisonment because he committed the offenses to which he pleaded guilty before CPL 530.12 (5) was amended to increase the maximum duration of final orders of protection. In support of his contention, the defendant relies upon *People v Diggs* (73 AD3d 1210 [2010]), in which this Court held that it was error for the sentencing court to impose certain fees upon a

defendant who committed the crimes of which he was convicted prior to the enactment of the legislation requiring the imposition of those fees. Although the defendant acknowledges that he was asked to waive the right to appeal as a condition of his plea agreement, he maintains that his waiver cannot be enforced because it was not knowing, voluntary, and intelligent.

In response, the People emphasize that the defendant failed to preserve for appellate review his contention that the duration of the order of protection exceeds the statutorily permissible maximum because he did not raise this issue at sentencing. The People urge this Court not to review the defendant's claim in the interest of justice because the 2006 amendment of CPL 530.12 (5) reflects the fact that the Legislature "did not believe that the maximum durations of final orders of protection under the old law . . . were sufficiently long to protect residents of the State from being threatened or victimized in the future by those who had threatened or victimized them in the past." On the merits, the People contend that the Supreme Court properly relied upon the version of CPL 530.12 (5) which was in effect at the time of sentencing because an order of protection is not a criminal punishment and, thus, retroactive application of CPL 530.12 (5) does not violate the Ex Post Facto Clause of the United States Constitution.

Turning first to the threshold procedural issues presented, we agree with the defendant's contention that his waiver of the right to appeal is unenforceable. The record reveals that, immediately after obtaining the defendant's acknowledgment that he understood the various constitutional trial rights he was forfeiting as a result of his plea of guilty, the Supreme Court advised him that if he were to be "tried and convicted," he would have the right to appeal, but that he was now giving up that right. This explanation was misleading because it suggests that only defendants who are convicted after trial have a right to appeal. Furthermore, instead of eliciting a specific acknowledgment that the defendant was waiving his right to appeal, the Supreme Court followed up its explanation by asking the defendant whether he was willing to "give up all those rights and any other rights" he possessed and now plead guilty. Without any indication in the record that the defendant understood the distinction between the right to appeal and other trial rights which are automatically forfeited incident to a plea of guilty, we cannot conclude that he knowingly, voluntarily, and intelligently waived his right to appeal (*see People v Moyett*, 7 NY3d 892, 893

[2006]; *People v Mayo*, 77 AD3d 683, 684 [2010]; *People v Gheradi*, 68 AD3d 892 [2009]; *People v Olivier*, 48 AD3d 486 [2008]).

■ Although the defendant's waiver of the right to appeal is unenforceable, the People correctly point out that his challenge to the duration of the order of protection is unpreserved for appellate review because he did not raise this issue at sentencing or move to amend the order of protection on this ground (*see* CPL 470.05 [2]; *People v Nieves*, 2 NY3d 310 [2004]; *People v Maxineau*, 78 AD3d 732 [2010]; *People v Langhorne*, 60 AD3d 867 [2009]; *People v Dale*, 43 AD3d 1075 [2007]). While a narrow exception to the preservation rule exists where a court exceeds its powers by imposing an illegal sentence (*see People v Samms*, 95 NY2d 52, 56 [2000]; *People v Fuller*, 57 NY2d 152, 156 [1982]), the Court of Appeals has held that this exception does not apply to challenges to the duration or scope of an order of protection because an order of protection is not part of a defendant's sentence (*see People v Nieves*, 2 NY3d at 317). To the contrary, "an order of protection issued incident to a criminal proceeding is an ameliorative measure intended to safeguard the rights of victims and witnesses both prior to and after conviction" (*id.* at 316).

Nevertheless, the intermediate appellate courts of this state are vested with the discretion to review unpreserved claims in the interest of justice (*see* CPL 470.15 [6] [a]). We exercise that discretion here in order to clarify whether retroactive application of the amended version of CPL 530.12 (5) to crimes committed prior to its effective date is permissible.

The statutory provision at issue on this appeal, CPL 530.12 (5), was amended in 2006 to increase the maximum duration of a final order of protection issued in favor of the victim of a felony family offense from five years to eight years. As part of the same legislative package, CPL 530.13 (4), which vests criminal courts with the authority to issue orders of protection for victims and witnesses who are not involved in family offenses, was similarly amended to increase the duration of orders of protection issued upon a felony conviction from five years to eight years. The Assembly bill to amend these statutes was supported by several governmental agencies, including the Division of Probation and Correctional Alternatives, the Crime Victims Board, the Office for the Prevention of Domestic Violence, and the Division of Parole (*see* Bill Jacket, L 2006, ch 215), and legislative history reflects an unequivocal intent to provide

greater protection to crime victims. In a memorandum in support of the bill, the Office for the Prevention of Domestic Violence observed that

"[a]n order of protection is critical for the safety of domestic violence victims. In the best of circumstances, it will serve to deter a perpetrator from abusing in the future. If this deterrence fails, an order of protection gives the victim, law enforcement and the courts the necessary legal platform from which to take further action to hold an abuser accountable. Issuing longer orders will provide greater safety for victims and their children" (Mem of Off for Prevention of Dom Violence, Bill Jacket, L 2006, ch 215, at 18).

Further, in discussing the need for the amendment, the bill sponsor observed that

"[t]hose who are witnesses to or victims of crimes that are tried in criminal court are in as much need of protection, if not more, as those who are victims of domestic violence where the cases are heard in Family Court . . . The current time periods for which a judge in Criminal Court may issue an order of protection are not long enough. They do not provide a victim with the protection often needed" (Letter from Assembly Sponsor, July 10, 2006, Bill Jacket, L 2006, ch 215, at 3).

As amended, CPL 530.12 (5) provided that the duration of an order of protection issued "[u]pon conviction of any crime . . . between spouses, parent and child, or between members of the same family or household" which is a felony "shall not exceed the greater of: (i) eight years from the date of such conviction, or (ii) eight years from the date of the expiration of the maximum term of an indeterminate or the term of a determinate sentence of imprisonment actually imposed." The amendment took effect on August 25, 2006 (L 2006, ch 215, § 1).

■ In the case before us, the Supreme Court set the expiration date of the final order of protection it issued in favor of the victim in accordance with the amended version of CPL 530.12 (5), which was in effect on the date of sentencing, but not on the date the defendant committed the crimes to which he pleaded guilty. The Appellate Division, Fourth Department, has already held that it is proper for a sentencing court to set an expiration date for a final order of protection in accordance with

the version of the statute which is in effect when the judgment of conviction is entered (*see People v Hernandez*, 71 AD3d 1501 [2010]; *People v Halter*, 66 AD3d 1442 [2009]). The defendant urges us to disregard this authority because the brief decisions in *Hernandez* and *Halter* do not explain their rationale. However, our independent analysis of this issue leads us to agree that it is entirely proper for a sentencing court to issue a final order of protection in accordance with the version of the statute in effect at sentencing, rather than the version in effect when the subject offenses are committed.

The issue of whether retroactive application of the amended version of CPL 530.12 is permissible turns upon whether such application would violate the Ex Post Facto Clause of the United States Constitution, which provides that "[n]o State shall . . . pass any . . . ex post facto law" (US Const, art I, § 10 [1]). The constitutional prohibition against ex post facto laws applies to "penal statutes which disadvantage the offender affected by them" (*Collins v Youngblood*, 497 US 37, 41 [1990]). A statute will be considered an ex post facto law if it "punishes as a crime an act previously committed, which was innocent when done," "makes more burdensome the punishment for a crime, after its commission," or "deprives one charged with crime of any defense available according to law at the time when the act was committed" (*Beazell v Ohio*, 269 US 167, 169 [1925]; *see Rogers v Tennessee*, 532 US 451, 456 [2001]; *Collins v Youngblood*, 497 US at 42; *Calder v Bull*, 3 US 386, 390 [1798]; *Kellogg v Travis*, 100 NY2d 407, 410 [2003]). In contrast, a statute which is enacted for nonpunitive purposes, and is not so punitive in effect as to negate that nonpunitive intent, may be retroactively applied without violating the Ex Post Facto Clause (*see United States v Ward*, 448 US 242, 248-249 [1980]).

These principles are illustrated by *Doe v Pataki* (120 F3d 1263 [1997], *cert denied* 522 US 1122 [1998]). In *Doe*, the United States Court of Appeals for the Second Circuit (hereinafter the Second Circuit) was faced with the issue of whether New York's Sex Offender Registration Act (Correction Law art 6-C; hereinafter SORA), which requires sex offenders to register with law enforcement officials after serving their sentences, and provides for various degrees of public notification of the identity and address of these offenders, violated the Ex Post Facto Clause. The court began its analysis by acknowledging that since SORA applied to sex offenders incarcerated or on parole or probation on its effective date, it thereby imposed "obligations on many

persons whose crimes were committed prior to the effective date" (*id.* at 1266). The Second Circuit then conducted a two-stage inquiry to determine whether the retroactive application of SORA was nevertheless permissible. In the first stage of its inquiry, the Second Circuit concluded that there was ample evidence that SORA was enacted to further the nonpunitive goals of protecting the public and facilitating future law enforcement efforts, rather than to punish sex offenders for their past offenses (*id.* at 1277). In the second stage of its inquiry, the Second Circuit further concluded that neither SORA's public notification requirements nor registration requirements were so punitive in form and effect as to negate the Legislature's nonpunitive intent. Accordingly, the Second Circuit held that retroactive application of SORA was not constitutionally barred.

Here too, legislative history makes clear that the 2006 amendment increasing the maximum permissible duration of orders of protection issued pursuant to CPL 530.12 (5) and 530.13 (4) was intended to provide greater protection to victims and witnesses, rather than to punish defendants. Indeed, the Court of Appeals, in the course of analyzing the issue of whether the issuance of a final order of protection pursuant to CPL 530.13 (4) is a part of a defendant's sentence, stressed that the legislative history underlying an earlier amendment of that provision demonstrated that "the primary intent of the statute is to ensure that victims and 'witnesses who have the courage and civic responsibility to cooperate with law enforcement officials are afforded the maximum protection possible' " (*People v Nieves*, 2 NY3d at 316, quoting Governor's Mem approving L 1998, ch 610, 1998 McKinney's Session Laws of NY, at 1485). The Court also observed in *Nieves* that since CPL 530.13 authorizes the issuance of temporary orders of protection during the pendency of the criminal proceeding and prior to conviction, "the Legislature could not have intended the orders of protection to be punitive in nature" (*People v Nieves*, 2 NY3d at 316). Like CPL 530.13, CPL 530.12 authorizes the issuance of temporary orders of protection during the pendency of the proceeding, further evidencing the nonpunitive intent of both statutory provisions. Moreover, the 2006 amendment, which merely extends the permissible duration of orders of protection, cannot be viewed as so punitive in its consequences as to transform an order of protection into punishment. Accordingly, application of the 2006 amendment extending the maximum duration of final orders of protection issued pursuant to CPL 530.12 (5) to crimes

committed before its effective date does not violate the Ex Post Facto Clause.

Finally, we turn to the defendant's contention that our decision in *People v Diggs* (73 AD3d 1210 [2010]) is controlling and compels us to hold that the Supreme Court was not authorized to issue a final order of protection with a duration exceeding the maximum permitted by statute at the time he committed his offenses. In *Diggs*, the defendant argued that it was a violation of the Ex Post Facto Clause to require him to pay a DNA databank fee, a sex offender registration fee, and a supplemental sex offender victim fee because he committed the crimes for which he was convicted on January 11, 2003, prior to the enactment of legislation amending Penal Law § 60.35 to authorize the imposition of these fees. The defendant additionally argued that it was error to require him to pay a mandatory surcharge and crime victim assistance fee in the sum of $270, since Penal Law § 60.35 required a mandatory surcharge and crime victim assistance fee in the sum of only $210 at the time the acts underlying his convictions were committed. The People conceded that the defendant was erroneously sentenced to a surcharge and fees based upon legislation enacted subsequent to the date of the offenses for which he was convicted. We accepted the People's concession, and modified the judgment of conviction to vacate the imposition of the challenged fees, and to reduce the mandatory surcharge and crime victim assistance fee to $210. A number of other decisions from this Court and from the Appellate Divisions, First, Third, and Fourth Departments have also concluded, often based upon concessions by the People, that the retroactive imposition of fees and surcharges is improper (*see People v Bradshaw*, 76 AD3d 566 [2010]; *People v Pelsey*, 60 AD3d 1088, 1089 [2009]; *People v Uceta*, 46 AD3d 304, 305 [2007]; *People v Caggiano*, 46 AD3d 1405 [2007]; *People v Fomby*, 42 AD3d 894, 896 [2007]; *People v Hill*, 25 AD3d 724 [2006]; *People v Cruz*, 25 AD3d 565, 566 [2006]; *People v Zsolt*, 17 AD3d 150, 151 [2005]; *People v Febres*, 11 AD3d 319 [2004]; *People v Goldwire*, 301 AD2d 677, 678 [2003]).

The Court of Appeals, however, in its recent decision in *People v Guerrero* (12 NY3d 45 [2009]), has now cast doubt upon the determination that the retroactive imposition of the various fees and surcharges mandated by Penal Law § 60.35 represents an unconstitutional ex post facto penalty. In explaining its rationale in *Guerrero*, the Court held that the mandatory surcharge and crime victim assistance fees required by Penal Law § 60.35

are not a part of a defendant's sentence and, therefore, need not be pronounced in the defendant's presence at sentencing. In reaching this conclusion, the Court began by examining the language of Penal Law § 60.35 (1) (a), which states that "there shall be levied at sentencing a mandatory surcharge, sex offender registration fee, DNA databank fee and a crime victim assistance fee *in addition to any sentence required or permitted by law*" (emphasis added), rather than as a part of the sentence itself. Since the text of Penal Law § 60.35 "clearly indicates that the surcharge and fee are *not* incorporated into the sentence," the Court determined that "the fact that this provision is within the Penal Law's sentencing scheme does not lead to the conclusion that these assessments are component elements of the sentence" (*People v Guerrero*, 12 NY3d at 48). The Court further emphasized that the legislative history underlying Penal Law § 60.35 (1) supported the proposition that the Legislature did not intend the surcharge or fee to be an additional punishment component of the sentence (*see People v Guerrero*, 12 NY3d at 48-49). Rather, the legislative history revealed that Penal Law § 60.35 was "originally enacted as part of a massive revenue-raising bill" (*People v Guerrero*, 12 NY3d at 49). Finally, the Court pointed out that when Penal Law § 60.35 was originally enacted in 1982, it was entitled "Mandatory *penalty* assessment required in certain cases." Just one year later, however, the Legislature changed every statutory reference to "penalty assessment" in Penal Law § 60.35 to "mandatory surcharge." The Court deemed these language revisions to be highly significant because they "eliminated the implication connoted by use of the word 'penalty' that this assessment was meant to be punitive as well as to raise revenue," and instead reinforced the nonpunitive nature of the assessments (*People v Guerrero*, 12 NY3d at 50).

As *Guerrero* highlights, the Legislature intended the various surcharges and fees authorized by Penal Law § 60.35 to be revenue-generating measures rather than punishment. Furthermore, although such fees are imposed incident to a criminal conviction, they are not necessarily so punitive in effect that retroactive imposition violates the Ex Post Facto Clause (*see Kennedy v Mendoza-Martinez*, 372 US 144, 168-169 [1963]; *Myrie v Commissioner, N.J. Dept. of Corrections*, 267 F3d 251 [2001]).

Nevertheless, regardless of whether the retroactive imposition of the fees and surcharges mandated by Penal Law § 60.35

violates the Ex Post Facto Clause, the retroactive application of the 2006 amendment extending the maximum-permissible duration of orders of protection issued pursuant to CPL 530.12 (5) clearly does not do so. The Legislature acted to extend the maximum length of orders of protection issued in favor of victims of family felony offenses in order to give these victims a measure of increased protection from their abusers, rather than to punish the abusers. Since there is no constitutional bar to the retroactive application of the 2006 amendment to CPL 530.12 (5), the legislative intent to provide greater protection to family felony offense victims must be honored. Accordingly, we reject the defendant's contention that *Diggs* is controlling, and conclude that the Supreme Court had the authority to issue a final order of protection with a maximum duration of eight years, in accordance with the version of CPL 530.12 (5) in effect on the date of sentencing. Therefore, upon the appeal from the judgment, the request to vacate the final order of protection is denied.

SKELOS, J.P., HALL and LOTT, JJ., concur.

Ordered that upon the appeal from the judgment, the request to vacate the final order of protection is denied.