People v Bradshaw (2022 NY Slip Op 05216)

People v Bradshaw

2022 NY Slip Op 05216

Decided on September 21, 2022

Appellate Division, Second Department

Christopher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 21, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
CHERYL E. CHAMBERS
SHERI S. ROMAN
LINDA CHRISTOPHER, JJ.

2010-09061
 (Ind. No. 1503/05)

[*1]The People of the State of New York, respondent,
v
Jay Bradshaw, appellant.

APPEAL by the defendant from a judgment of the Supreme Court (Robert C. McGann, J.), rendered June 24, 2010, and entered in Queens County, convicting him of burglary in the first degree, rape in the first degree, sexual abuse in the first degree, criminal sexual act in the first degree, and robbery in the first degree, after a nonjury trial, and imposing sentence.

Patricia Pazner, New York, NY (Erica Horwitz of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, William H. Branigan, and Katherine A. Triffon of counsel), for respondent.

CHRISTOPHER, J.

OPINION & ORDER
On this appeal we are presented with an opportunity to consider whether the retroactive imposition of a supplemental sex offender victim fee pursuant to Penal Law § 60.35(1)(b) violates the Ex Post Facto Clause of the United States Constitution (see US Const, art I, § 10[1]). For the reasons that follow, we conclude that the supplemental sex offender victim fee is not a form of punishment, and therefore, there is no constitutional violation if such a fee is imposed at sentencing for crimes committed prior to the effective date of the legislation providing for such a fee.
I. Factual and Procedural Background
On April 29, 2004, the 17-year-old victim was alone in the apartment where she resided with her fiancé and his family, when she heard the doorbell ring, followed by knocking on the door to the apartment. Unable to see anything through the peephole and unable to hear what the person outside the door was saying, the victim opened the door slightly. Although the victim then tried to close the door, the individual, whom the victim later identified as the defendant, was holding a knife and put his arm through the door. As the victim screamed for help, the defendant entered the apartment and locked the door. When the victim started to call 911 on her cell phone, the defendant pushed her to the couch, causing her to drop her phone. The defendant told the victim, "shut up bitch" and held her with her back toward him, and the knife blade to her neck. After walking the victim through the apartment and asking her where the money was, the defendant took the victim into the master bedroom for a second time, pushed her face down on the bed, pulled her pants down, placed a plastic grocery bag on his penis, made contact with the victim's anus, and then penetrated her vagina. The defendant made the victim take off her engagement ring and give it to him, and he took her cell phone. After the victim heard the defendant leave the apartment, she discovered that her wallet, a DVD player, and $5 that had been on a table in her bedroom were gone.
A DNA profile, generated from semen stains on the shirt the victim had been wearing at the time of the offense, was matched to a DNA profile generated from a buccal swab taken from [*2]the defendant.
After a nonjury trial, the defendant was convicted of burglary in the first degree, rape in the first degree, sexual abuse in the first degree, criminal sexual act in the first degree, and robbery in the first degree. On June 24, 2010, the Supreme Court sentenced the defendant to determinate terms of imprisonment of 25 years, to be followed by a period of postrelease supervision of 5 years, on the convictions of burglary in the first degree, rape in the first degree, criminal sexual act in the first degree, and robbery in the first degree, and a determinate term of imprisonment of 7 years, to be followed by a period of postrelease supervision of 3 years, on the conviction of sexual abuse in the first degree. The sentences imposed on the convictions of burglary in the first degree, rape in the first degree, criminal sexual act in the first degree, and sexual abuse in the first degree were to run concurrently with each other, and consecutively to the sentence imposed on the conviction of robbery in the first degree, and all of the sentences were to run consecutively to a 9-year sentence that the defendant was serving as a result of a conviction in Kings County. At sentencing, the court also imposed a surcharge, as well as, inter alia, a sex offender registration fee and a supplemental sex offender victim fee.
II. Analysis
A. Supplemental Sex Offender Victim Fee
On appeal, the defendant contends, among other things, that the Supreme Court's imposition of the supplemental sex offender victim fee at sentencing violated the Ex Post Facto Clause of the United States Constitution. On August 20, 2004, an amendment to Penal Law § 60.35, adding a provision for the imposition of a supplemental sex offender fee in the amount of $1,000, was signed into law (see L 2004, ch 56, part E, § 1). The defendant argues that because he committed the offenses for which he was convicted in April 2004, prior to the August 2004 enactment of the amendment to the statute providing for the imposition of the supplemental sex offender fee, the court's imposition of such a fee violated the Ex Post Facto Clause (see People v Fomby, 42 AD3d 894, 896). The defendant relies upon, inter alia, this Court's decision and order in People v Diggs (73 AD3d 1210), wherein we held, albeit based on the People's concession, that the Supreme Court should not have imposed, among other things, a DNA databank fee, a sex offender registration fee, and a supplemental sex offender victim fee pursuant to Penal Law § 60.35 when the crimes for which the defendant was convicted were committed prior to the effective date of the legislation providing for the fees. However, as pointed out by this Court in People v Foster (87 AD3d 299), and as will be discussed herein, the Court of Appeals in its opinion in People v Guerrero (12 NY3d 45), has "cast doubt upon the determination that the retroactive imposition of the various fees and surcharges mandated by Penal Law § 60.35 represents an unconstitutional ex post facto penalty" (People v Foster, 87 AD3d at 308).
Penal Law § 60.35(1)(a) states in pertinent part, "there shall be levied at sentencing a mandatory surcharge, sex offender registration fee, DNA databank fee and a crime victim assistance fee in addition to any sentence required or permitted by law." In 2004, section 60.35 was amended to add a provision requiring that a supplemental sex offender victim fee of $1,000 is to be paid by defendants convicted of, inter alia, an offense defined in article 130 of the Penal Law (see L 2004, ch 56, part E, § 1; Penal Law § 60.35[1][b]).
We begin our analysis with the Ex Post Facto Clause of the United States Constitution which provides that "[n]o State shall . . . pass any . . . ex post facto law" (US Const, art I, § 10[1]). "The constitutional prohibition against ex post facto laws applies to 'penal statutes which disadvantage the offender affected by them'" (People v Foster, 87 AD3d at 306, quoting Collins v Youngblood, 497 US 37, 41). "A statute will be considered an ex post facto law if it 'punishes as a crime an act previously committed, which was innocent when done,' 'makes more burdensome the punishment for a crime, after its commission,' or 'deprives one charged with crime of any defense available according to law at the time when the act was committed'" (People v Foster, 87 AD3d at 306, quoting Beazell v Ohio, 269 US 167, 169; see Rogers v Tennessee, 532 US 451, 456; Collins v Youngblood, 497 US at 42). "In contrast, a statute which is enacted for nonpunitive purposes, and is not so punitive in effect as to negate that nonpunitive intent, may be retroactively applied without violating the Ex Post Facto Clause" (People v Foster, 87 AD3d at 306; see United States v Ward, 448 US 242, 248-249).
In determining whether the retroactive application of a statute violates the Ex Post Facto Clause, a two-stage inquiry is required (see Matter of Devine v Annucci, 150 AD3d 1104, 1106; People v Foster, 87 AD3d at 306-307; Doe v Pataki, 120 F3d 1263, 1274-1275 [2d Cir]). The [*3]threshold issue to be determined is the legislature's intent in enacting the challenged statute; that is, was the statute enacted for a regulatory rather than a punitive purpose (see Matter of Devine v Annucci, 150 AD3d at 1106; People v Foster, 87 AD3d at 306-307; Doe v Pataki, 120 F3d at 1274-1275). However, even if the court finds that the challenged statute was not intended to punish, the court must next consider whether the statute is so punitive in effect as to negate the nonpunitive intent (see Matter of Devine v Annucci, 150 AD3d at 1106; People v Foster, 87 AD3d at 306; Doe v Pataki, 120 F3d at 1274-1275).
We now turn to the issue of whether the retroactive imposition of the supplemental sex offender victim fee, pursuant to Penal Law § 60.35(1)(b), violates the Ex Post Facto Clause. To determine this issue, we look to the analysis and findings of the Court of Appeals in People v Guerrero, wherein the Court found that Penal Law § 60.35 was not intended to be punitive (see People v Guerrero, 12 NY3d 45). In Guerrero, the Court of Appeals addressed the issue of whether the imposition of a mandatory surcharge and crime victim assistance fee mandated by Penal Law § 60.35(1) must be pronounced by the judge in open court at sentencing (see People v Guerrero, 12 NY3d at 46-47). The Guerrero Court held that the "mandatory surcharge and crime victim assistance fee mandated by Penal Law § 60.35(1) are not part of a sentence within the meaning of sections 380.20 and 380.40 of the CPL; therefore, a judge need not pronounce them in a defendant's presence during sentencing" (id. at 47).
In reaching this determination, the Court of Appeals, among other things, examined the plain language and the legislative history of Penal Law § 60.35, and found that the statute was nonpunitive in nature (see People v Guerrero, 12 NY3d at 48-50; People v Foster, 87 AD3d at 308-310). In reviewing the statutory text of Penal Law § 60.35(1), the Court noted that the statute states "there shall be levied at sentencing a mandatory surcharge, sex offender registration fee, DNA databank fee and a crime victim assistance fee in addition to any sentence required or permitted by law" (emphasis added), rather than as a part of the sentence itself (see People v Guerrero, 12 NY3d at 48, quoting Penal Law § 60.35[1][a]; People v Foster, 87 AD3d at 309). Inasmuch as the "text clearly indicates that the surcharge and fee are not incorporated into the sentence," the Court concluded that "the fact that this provision is within the Penal Law's sentencing scheme does not lead to the conclusion that these assessments are component elements of the sentence" (People v Guererro, 12 NY3d at 48; see People v Foster, 87 AD3d at 309).
The Court found further support in the legislative history of the statute for "the proposition that the Legislature did not intend the surcharge or fee to be an additional punishment component of a sentence" (People v Guerrero, 12 NY3d at 49 [internal quotation marks omitted]; see People v Foster, 87 AD3d at 309). The Court noted that "[Penal Law § ] 60.35 was originally enacted as part of a massive revenue-raising bill meant to 'avert the loss of an estimated $100 million in State tax revenues'" (People v Guerrero, 12 NY3d at 49, quoting Legislative Mem in Support, Bill Jacket, L 1982, ch 55 at 6; see People v Foster, 87 AD3d at 309). Finally, the Court noted that "the statute's nomenclature reinforces its nonpunitive nature," stating that "the assessments imposed by section 60.35(1) are called a 'surcharge' or a 'fee,' not a 'penalty'" (People v Guerrero, 12 NY3d at 49; see People v Foster, 87 AD3d at 309). The Court attached much significance to the fact that when Penal Law § 60.35 was originally enacted in 1982, it was entitled "Mandatory penalty assessment required in certain cases," but only one year later, the legislature changed every statutory reference to "penalty assessment" in Penal Law § 60.35 to "mandatory surcharge" (People v Guerrero, 12 NY3d at 49 [emphasis and internal quotation marks omitted]; People v Foster, 87 AD3d at 309 [emphasis and internal quotation marks omitted]). The Court concluded that these language revisions clarified and "eliminated the implication connoted by use of the word 'penalty' that this assessment was meant to be punitive as well as to raise revenue" (People v Guerrero, 12 NY3d at 50; People v Foster, 87 AD3d at 809 [internal quotation marks omitted]).
While the Guerrero Court's analysis did not specifically address the supplemental sex offender victim fee set forth in Penal Law § 60.35(1)(b) at issue herein, we find no reason that its analysis would not be applicable to this particular provision of the statute, which merely sets forth an additional mandated fee when a defendant is convicted of certain offenses. Moreover, a review of the legislative history of the 2004 amendment pursuant to which the supplemental sex offender victim fee was added to Penal Law § 60.35, reveals that it was part of an act entitled "Appropriations-Budgets," that enacted "into law major components of legislation which are necessary to implement the state fiscal plan for the 2004-2005 state fiscal year" (id., as amended by L 2004, ch 56, § 1).
Thus, in performing the first step in the analysis of whether the retroactive imposition of the supplemental sex offender victim fee pursuant to Penal Law § 60.35(1)(b) violates the Ex Post Facto Clause (see Doe v Pataki, 120 F3d at 1274-1275), it is clear under Guerrero, that Penal Law § 60.35(1)(b) was enacted for fiscal purposes, rather than punishment (see People v Guerrero, 12 NY3d at 49-50; People v Foster, 87 AD3d at 309).
Next, we proceed to the second step of the inquiry, and consider whether the statute is punitive in effect (see People v Parilla, 109 AD3d 20, 23-24; Ciafone v Kenyatta, 27 AD3d 143, 148; Doe v Pataki, 120 F3d at 1274-1275). In so doing, we consider the following factors articulated in Kennedy v Mendoza-Martinez (372 US 144): "[1] whether the sanction involved an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned" (id. at 168-169 [footnotes omitted]). Based on the above analysis, our evaluation of the factors leads to the conclusion that, "although [a supplemental sex offender victim fee is] imposed incident to a criminal conviction, [it is] not necessarily so punitive in effect," as to negate the nonpunitive intent of the statute (People v Foster, 87 AD3d at 309; see Kennedy v Mendoza-Martinez, 372 US at 168-169; Matter of Devine v Annucci, 150 AD3d at 1107; People v Parilla, 109 AD3d at 24; Ciafone v Kenyatta, 27 AD3d at 148-152).
Accordingly, we find that the retroactive imposition of the supplemental sex offender victim fee does not violate the Ex Post Facto Clause (see People v Guerrero, 12 NY3d at 49-50; People v Foster, 87 AD3d at 309).
While we acknowledge that this Court has previously held that the retroactive imposition of the supplemental sex offender victim fee pursuant to Penal Law § 60.35 is improper, albeit based upon concessions by the People, we now hold those decisions should no longer be followed (see People v Bradshaw, 76 AD3d 566, affd 18 NY3d 257; People v Diggs, 73 AD3d 1210).
B. Remaining Contentions
Contrary to the defendant's contention, the Supreme Court properly determined that the defendant was competent to represent himself (see People v Reason, 37 NY2d 351, 356; People v Schoolfield, 196 AD2d 111, 116-117). The defendant's request to proceed pro se was unequivocal (see People v Paulin, 140 AD3d 985, 987). Further, the court, following a thorough, searching inquiry, properly determined that the defendant made a knowing, voluntary, and intelligent waiver of the right to counsel (see People v Smith, 92 NY2d 516, 520; People v Cucchiara, 174 AD3d 816, 816-817).
Additionally, the defendant's contention that he was deprived of a fair trial due to prosecutorial misconduct that occurred throughout the trial is unpreserved for our review (see People v Tardbania, 72 NY2d 852, 853; People v Balls, 69 NY2d 641, 642; People v Medina, 53 NY2d 951, 953). In any event, any improprieties were not so pervasive or egregious as to deprive the defendant of a fair trial (see People v Pruchnicki, 74 AD3d 1820, 1822). Moreover, "where, as here, a case is tried without a jury, absent a showing of prejudice, the [court] is presumed to have considered only competent evidence adduced at trial in reaching the verdict" (People v Shevchenko, 175 AD3d 922, 924 [internal quotation marks omitted]).
Further, the defendant's right to confrontation (see US Const Amend VI) was not violated by the admission into evidence of files containing the DNA test results through the testimony of an assistant director of forensic biology, who reviewed the case file and independently interpreted the data to arrive at her own conclusions (see People v Tsintzelis, 35 NY3d 925, 926; People v Frederick, 186 AD3d 1398, 1399). Thus, the witness was not functioning merely as "a conduit for the conclusions of others" (People v Austin, 30 NY3d 98, 105 [internal quotation marks omitted]; see People v Frederick, 186 AD3d at 1399).
Finally, contrary to the defendant's contention, under the circumstances, the sentence imposed was not excessive (People v Suitte, 90 AD2d 80).
Accordingly, the judgment is affirmed.
DUFFY, J.P., CHAMBERS and ROMAN, JJ., concur.
ORDERED that the judgment is affirmed.
ENTER:
Maria T. Fasulo
Clerk of the Court