■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HECTOR FERRER, Appellant. [894 NYS2d 387]—

At the SORA classification hearing, defendant introduced expert testimony challenging the accuracy of the risk assessment instrument (RAI) in predicting the risk of recidivism, and presenting other factors that the expert viewed as better predic-

tors of risk. The expert testified, among other things, that New York's RAI is unreliable and is not generally accepted in the scientific community. The expert cited a number of methodological defects in the RAI, emphasizing that it assigns a particular number of points for each risk factor without employing valid statistical data demonstrating the relationship between that factor and actual recidivism among a population of sex offenders. According to the expert, an actuarial risk assessment instrument known as the STATIC-99 (*see Matter of State of New York v Rosado*, 25 Misc 3d 380, 388-394 [Sup Ct, Bronx County 2009] [extensive discussion of STATIC-99]) is based on valid empirical data and would be an appropriate tool of assessment, unlike the RAI. Defendant also presented testimony that, had he been evaluated under the STATIC-99, he would have shown a relatively low risk of recidivism.

Defendant argues that the RAI is scientifically invalid, and that he was therefore deprived of due process by its use. Although, as discussed below, his point score makes him a level two offender, he seeks a reduction to level one, either as the default level on the basis of rejection of the RAI, or by affirmatively substituting his claimed STATIC-99 score to find a "low" risk of reoffense. Defendant has not cast his argument as a request for a discretionary downward departure; instead he argues that use of the RAI is erroneous as a matter of law.

Regardless of whether the RAI is the optimal tool of predicting recidivism, or whether another instrument might be better, defendant has not shown that the use of the RAI is unconstitutional. In imposing civil restrictions on liberty based on predictions of future dangerousness, governments have considerable latitude that does not necessarily "depend[ ] on the research conducted by the psychiatric community" (*Jones v United States*, 463 US 354, 365 n 13 [1983]; *see also Kansas v Hendricks*, 521 US 346, 360 n 3 [1997]). Moreover, as defendant acknowledges in his reply brief, the risk level designated in the RAI is merely presumptive, and a court may depart from it as a matter of discretion (*People v Mingo*, 12 NY3d 563, 568 n 2 [2009]; *People v Johnson*, 11 NY3d 416, 418, 421 [2008]). Here, the hearing court's decision indicates that it weighed the RAI against the defense evidence and arguments, and that it properly concluded that defendant had a moderate risk of reoffense, so that a level two assessment was appropriate.

Defendant alternatively argues that even under the RAI there were insufficient points established to qualify him as a level two offender. Although our analysis differs somewhat from that of the hearing court (*see People v Larkin*, 66 AD3d 592 [2009]), we

find that the People met their burden of establishing, by clear and convincing evidence, risk factors bearing a total score of 75 points, which supports a level two adjudication. The court should not have assessed 15 points for drug abuse, since defendant had been abstinent for an 18-year period and was not abusing drugs at the time of the offense. However, we find that the court should have assessed 10 points for defendant's failure to accept responsibility for his crime, notwithstanding his guilty plea, since both the presentence report and the case summary indicated that he denied committing the offense and declared that he had pleaded guilty as a matter of expediency. Defendant's argument concerning the sufficiency of the proof of the age of the victim at the time of the underlying sex crime is without merit (*see People v Mingo*, 12 NY3d at 573).

We have considered and rejected defendant's remaining claims. Concur—Tom, J.P., Saxe, Nardelli, Renwick and Freedman, JJ.