OPINION OF THE COURT
Andrias, J.
In this appeal, we consider whether amendments made to the Sex Offender Registration Act (SORA) (Correction Law art 6-C) since 1996, that, among other things, impose more stringent registration and notice requirements for convicted sex offenders, have rendered the act a punitive statute, so that its retroactive application to defendant violates the Ex Post Facto Clause or the state and federal constitutional prohibition against double jeopardy. For the reasons that follow, we find that SORA, as amended, does not constitute an impermissible ex post facto law or subject defendant to double jeopardy and that the record supports defendant’s adjudication as a level three sexually violent offender.
*22 On June 11,1996, defendant pleaded guilty to attempted murder in the second degree, admitting that on September 11, 1993 he raped a woman and repeatedly stabbed her in the chest. While defendant was incarcerated, his DNA was found to match the DNA developed from a semen sample collected from another rape victim on August 29, 1993, and defendant was indicted for that crime, which was committed while he was on parole after a 1990 conviction for robbery in the second degree. On June 25, 2003, defendant pleaded guilty to rape in the first degree and sodomy in the first degree. On September 16, 2003, he was sentenced, as a second violent felony offender (based on the robbery conviction), to 7 to 14 years, to run concurrently with the sentence on the attempted murder conviction.[1]
Before his conditional release date, the Board of Examiners of Sex Offenders (Board) prepared a case summary and risk assessment instrument (RAI) that assessed a total score of 170 points for various risk factors, which placed defendant presumptively in risk level three under SORA. The Board also recommended that defendant be designated a sexually violent offender based on his first-degree rape and sodomy convictions (see Correction Law § 168-a [3]). Defendant then moved to be classified at a lower risk level and to find SORA unconstitutional on its face and as applied to him. On April 1, 2010, after a hearing, defendant was designated a level three sexually violent offender under SORA.
SORA, effective January 21, 1996 (see L 1995, ch 192, § 3), imposes registration requirements on “ £[s]ex offender[s],’ ” i.e., “any person who is convicted of’ certain sex offenses enumerated in the statute (Correction Law § 168-a [1]). The act “applies to sex offenders incarcerated or on parole or probation on its effective date, as well as to those sentenced thereafter, thereby imposing its obligations on many persons whose crimes were committed prior to the effective date” (Doe v Pataki, 120 F3d 1263, 1266 [2d Cir 1997], cert denied 522 US 1122 [1998]; see Correction Law § 168-g).
In Doe v Pataki, the Second Circuit held that the retroactive application of SORA did not violate the Ex Post Facto Clause because the statute was intended to further the nonpunitive goals of protecting the public and enhancing law enforcement authorities’ ability to investigate and prosecute future sex *23 crimes, and neither SORA’s public notification requirements nor its registration requirements were so punitive in form and effect as to negate the legislature’s nonpunitive intent (120 F3d at 1277, 1284, 1285; see also Correction Law § 168). Defendant argues that SORA has been amended so significantly since Doe v Pataki that it is now a punitive statute, and that its retroactive application to him violates the Ex Post Facto Clause and the state and federal constitutional prohibition against double jeopardy.
States are prohibited from enacting an ex post facto law (US Const, art I, § 10 [1]), i.e., a law that “retroactively alter[s] the definition of crimes or increased] the punishment for criminal acts” (Collins v Youngblood, 497 US 37, 43 [1990]).
“A statute will be considered an ex post facto law if it ‘punishes as a crime an act previously committed, which was innocent when done,’ ‘makes more burdensome the punishment for a crime, after its commission,’ or ‘deprives one charged with crime of any defense available according to law at the time when the act was committed’ ” (People v Foster, 87 AD3d 299, 306 [2d Dept 2011], lv denied 18 NY3d 858 [2011], quoting Beazell v Ohio, 269 US 167, 169 [1925]).
In determining whether a statute renders the punishment for a crime more burdensome for purposes of the Ex Post Facto Clause, the United States Supreme Court has implemented an intent-effects test (see Smith v Doe, 538 US 84, 92 [2003]). Under the first prong of this test, the court determines whether the legislature intended the statute to be punitive or civil in nature. If the court finds that the legislature intended the statute to be punitive, then its retroactive application violates the Ex Post Facto Clause.
Notwithstanding numerous amendments to the statute since Doe v Pataki, the Court of Appeals has consistently held that SORA, “ ‘is not a penal statute and the registration requirement is not a criminal sentence. Rather than imposing punishment for a past crime, SORA is a remedial statute intended to prevent future crime’ ” (People v Gravino, 14 NY3d 546, 556-558 [2010] [emphasis deleted], quoting Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745, 752 [2007]; see also People v Windham, 10 NY3d 801, 802 [2008] [a SORA risk-level determination is a “collateral consequence of a conviction for a sex offense designed not to punish, but rather *24 to protect the public”]).[2] Accordingly, because the legislature intended the statute to be regulatory (see People v Pettigrew, 14 NY3d 406, 408 [2010]; People v Mingo, 12 NY3d 563, 571 [2009]; People v Stevens, 91 NY2d 270, 277 [1998]), we proceed to the second prong of the intents-effects test and consider whether SORA is now “so punitive either in purpose or effect as to negate [the State’s] intention to deem it civil” (Smith v Doe, 538 US at 92 [internal quotation marks omitted]). Because deference is due to a legislature’s stated intent, “only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty” (id. [internal quotation marks omitted]).
In performing the effects analysis, we consider the seven factors articulated in Kennedy v Mendoza-Martinez (372 US 144, 168-169 [1963]): (1) does the sanction involve an affirmative disability or restraint?; (2) has the sanction been historically regarded as punishment?; (3) is the sanction imposed only upon a finding of scienter?; (4) does the operation of the sanction promote retribution and deterrence?; (5) is the behavior to which it applies already a crime?; (6) is there an alternative purpose to which the sanction may rationally be connected?; and (7) is the sanction excessive in relation to the alternative purpose? The United States Supreme Court has not allocated a specific weight to each factor, but has observed that the factors “often point in differing directions” (see id. at 169) and that no one factor is determinative (see Hudson v United States, 522 US 93, 101 [1997]).
As applied to SORA, our evaluation of these factors leads to the conclusion that the post -Doe v Pataki amendments on which defendant relies were aimed at improving the strength, efficiency and effectiveness of SORA as a civil statute, not at punishing sex offenders, and are not so punitive in effect as to negate the legislature’s intent.
*25 Defendant argues that the effect of SORA is now punitive because the amended registration and notification requirements are significantly broader than those upheld in Doe v Pataki, and the right to petition for relief has been drastically limited. Particularly, whereas most offenders were originally required to register for 10 years, those designated level one must now register for 20 years and those designated level two and level three must now register for life (Correction Law § 168-h). Lifetime registration is also imposed on “sexual predators,” “sexually violent offenders,” and “predicate sex offenders,” regardless of their risk level (see Correction Law §§ 168-a [7] [a], [b], [c]; 168-h [2]). Only a level two offender who is not a sexual predator, sexually violent offender or predicate sex offender may apply for relief from lifetime registration (after 30 years) (Correction Law §§ 168-h [2]; 168-o [1]).
Levels one and two offenders may still register by mail in general, but every three years they must appear in person at the local police station to have a new photo taken; level three offenders and sexual predators are required to update their photographs annually and to personally verify their addresses with the law enforcement agency having jurisdiction every 90 days (Correction Law §§ 168-f [2] [b-2]; 168-h [3]). The identity and other information regarding all level two and level three offenders must be made available on the Internet (Correction Law § 168-q [1]). The first failure to report is a class E felony, and any subsequent failure a class D felony (Correction Law § 168-t).
These increased registration and reporting requirements are not excessive in relation to the public safety purpose of the statute and do not transform SORA into an additional statutory penalty. Although lifetime registration and Internet notification may have deterrent effects and promote community condemnation of offenders, they serve a valid regulatory function by providing the public with information related to community safety.
The Alaska statute at issue in Smith v Doe required sex offenders who had aggravated or multiple offenses to register for life and verify the information quarterly (538 US 84, 90 [2003], supra). In rejecting Smith’s argument that these requirements subjected him to “affirmative disability or restraint,” the Supreme Court found that “[t]he Act imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or re *26 straint” (id. at 99-100). Sex offenders were not subject to “a series of mandatory conditions,” and were “free to move where they wish[ed] and live and work as other citizens, with no supervision” (id. at 101). The same is true of SORA. While the failure to comply with the reporting requirements would subject the offender to criminal prosecution, “any prosecution is a proceeding separate from the individual’s original offense” (id. at 102).
In Doe v Pataki, the Second Circuit rejected the ex post facto challenge to SORA’s 90-day in-person reporting requirement for certain high risk offenders, stating, “We agree with the [djistrict [cjourt that the registration requirements of the SORA do not impose punishment upon the plaintiffs” (120 F3d at 1284; see also Manzullo v People of New York, 2010 WL 1292302, *8, 2010 US Dist LEXIS 32089, *22 [ED NY 2010] [denying habeas relief to petitioner on the ground that “both the registration and notification provisions of (Megan’s Law) (do) not constitute punishment for the purposes of the Ex Post Facto clause”] [internal quotation marks omitted]). The court also rejected the argument that notification was analogous to historical punishments such as branding because of its stigmatizing effects or banishment, since notification is not imposed in lieu of incarceration or fines or as part of the offender’s sentence, and is imposed only after sentencing (id. at 1283-1284). In addition, banishment involved state action in removing the offender from a locality, rather than the eviction by a landlord or community pressure to move faced by sex offenders; the latter are “private actions, however unfortunate, [and] are not intended consequences of the SORA” (id. at 1284). In addition, the duration, form and frequency of registration are tied to the risk of reoffense (id. at 1285).
In Doe v Raemisch (895 F Supp 2d 897 [ED Wis 2012]), the district court rejected the plaintiffs argument that Wisconsin’s sex offender registration law had become punitive. The court observed that in Doe v Smith “the [Supreme] Court held that lengthier reporting requirements for those convicted of multiple or violent offenses is reasonable because the distinction is ‘reasonably related to the danger of recidivism, and this is consistent with the regulatory objective” (id. at 908, quoting Smith v Doe, 538 US at 102) and that “[t]he State’s determination to legislate with respect to convicted sex offenders as a class, rather than require individual determinations of their dangerousness, does not make this statute a punishment under the Ex Post *27 Facto clause” (id. at 908, quoting Smith v Doe at 104; see also People v Ortiz, 19 Misc 3d 1137[A], 2008 NY Slip Op 51046[U], *2 [Suffolk Dist Ct 2008] [“(T)he statutory increase in the defendant’s registration period as a Level III sex offender from ten years to lifetime does not constitute a due process or ex post facto violation and is not a ground for modifying his previously assessed risk level”]).
In Nolan v Cuomo (2013 WL 168674, *1, 2013 US Dist LEXIS 6680, *1 [ED NY 2013]), the plaintiff alleged that defendants violated his constitutional rights by denying him the opportunity to be “declassified” as a registered sex offender under SORA. The court noted that while the plaintiff had not raised an ex post facto challenge to the increased duration of the registration periods that resulted from the SORA amendments, “[a]ny such challenge would likely be foreclosed by the Second Circuit’s decision that SORA’s notification requirements and registration provisions ‘do not constitute punishment for purposes of the Ex Post Facto Clause’ ” (2013 WL 168674, *2 n 5, 2013 US Dist LEXIS 6680, *7 n 5, quoting Doe v Pataki, 120 F3d at 1284). The court further observed that even after the 2006 amendments, which severely restricted the ability of a sex offender to petition for relief from the duty to register (Correction Law § 168-o [1]), SORA still allowed a sex offender to petition the court for an order modifying the level of notification (2013 WL 168674, *2, 2013 US Dist LEXIS 6680, *6-7; see also Correction Law § 168-o [2]).
Defendant contends that Correction Law § 168-q (1), which requires that a subdirectory of all level two and level three offenders that includes their name, age, photo, home address, work address, crime, modus of operation, type of victim targeted, and any college or university in which they are enrolled “be made available at all times on the internet via the [Division of Criminal Justice Services] homepage,” is now punitive because the information is unrestrictedly available to anyone with computer access. However, in Smith v Doe, the Supreme Court found that the dissemination to the public of the sex offender’s personal information via the Internet is not punitive because “[t]he purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender” (538 US at 99). The Court explained that “the stigma . . . results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. *28 [The US Constitution] does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment” (id. at 98). “To hold that the mere presence of a deterrent purpose renders such sanctions ‘criminal’ . . . would severely undermine the Government’s ability to engage in effective regulation” (id. at 102 [internal quotation marks omitted]).
Moreover, while this aspect of SORA notification has changed significantly, even in Doe v Pataki, the court distinguished between “access” and “dissemination” of information (120 F3d at 1278). SORA’s Internet notification method is still “passive,” as the community must seek access to the information, rather than being notified of the offender’s presence by the Division of Criminal Justice Services (DCJS). In addition, Internet notification is still limited to the higher risk categories of level two and level three offenders, and SORA prohibits the misuse of the information, subjecting anyone who misuses it to a fine of $500 to $1,000 (Correction Law § 168-q [2]).
Defendant also relies on the fact that in 1996, the number of “sex offenses,” including attempts, was about 30, whereas the current list is over 100 (Correction Law § 168-a [2], [3]). However, even the original list of 36 included misdemeanors and offenses that required no proof of sexual contact, and the addition of more offenses does not, standing alone, render the statute punitive.
Defendant also argues that SORA is more punitive because it directs DCJS to provide the registry to the Department of Health and the Department of Financial Services to make registrants ineligible to receive reimbursement or coverage for certain drugs, procedures or supplies (Correction Law § 168-b [2] [b]), to release the registry to Internet providers, who may restrict or remove them from their services (Correction Law § 168-b [10]), and to inform the housing authorities “at least monthly” of the home address of any level two or level three offender “within the corresponding municipality” (Correction Law § 168-b [12]). However, SORA merely requires that information about sex offenders be provided to other agencies, so that they may comply with certain provisions of the Public Health Law, the Social Services Law, the Elder Law, and the Insurance Law. This may be a disability (see Mendoza-Martinez, 372 US at 168-169), but it remains connected to protecting the public rather than punishing the offender.
Defendant points to the fact that the District Attorney, rather than the Board, makes the risk determination in non *29 incarceratory cases (Correction Law § 168-d [3]) and that SORA now mandates a proceeding prosecuted by the District Attorney’s Office and adjudicated by the sentencing court (see Correction Law §§ 168-d [3]; 168-n [3]). Defendant contends that even in incarceratory cases, the Board is involved only to the extent of preparing the RAI and case summary (Correction Law § 168-1 [6]). However, this scheme is not significantly different from the one addressed in Doe v Pataki, since the sentencing court still makes the ultimate recommendation.
Defendant argues that the Board is not a purely civil agency, but is “essentially a specialized parole board, composed entirely of parole and probation employees.” He contends that while the statute requires the Board Members to be “experts in the field of the behavior and treatment of sex offenders” (Correction Law § 168-1 [1]), it does not define expertise and, in fact, the Board is not comprised of mental health professionals but of criminal justice personnel. This, however, was the case in Doe v Pataki.
It may be true that subjecting sex offenders to lifetime registration and notification requirements, with their attendant obligations and restrictions, increases the difficulties and embarrassment a sex offender may endure, even where he has led a law-abiding life since his conviction. However, in assessing the constitutionality of a statute, this Court does not review the merits or wisdom of the legislature’s decisions on matters of public policy (Matter of New York County Lawyers’ Assn, v Bloomberg, 95 AD3d 92, 108 [1st Dept 2012], affd 19 NY3d 712 [2012]), and the fact that the restrictions are difficult and cumbersome is not enough to make them unconstitutional. Although “[o]ne can argue that such laws are too extreme or represent an over-reaction to the fear of sexual abuse of children, . . . they do not violate the ex post facto clause .... These provisions created new crimes; they did not increase the punishment for Plaintiffs’ previous offenses” (Doe v Raemisch, 895 F Supp 2d at 908; see also People v McFarland, 29 Misc 3d 1206[A], 2010 NY Slip Op 51705[U] [Sup Ct, NY County 2010]).
Accordingly, SORA, which is not punitive in nature, does not violate the Ex Post Facto Clause of the Federal Constitution (see Matter of Bush v New York State Bd. of Examiners of Sex Offenders, 72 AD3d 1078 [2d Dept 2010]; People v Bove, 52 AD3d 1124 [3d Dept 2008]; People v Frank, 37 AD3d 1043 [4th Dept 2007], lv denied 9 NY3d 803 [2007]).
The Double Jeopardy Clause of the Fifth Amendment of the US Constitution and article I of the New York State Consti *30 tution protect persons against being punished more than once for the same crime (People v Williams, 14 NY3d 198, 214 [2010]). The claim that SORA is penal in nature and violates the prohibition against double jeopardy was raised and rejected by the Third and Fourth Departments after numerous amendments to SORA went into effect (see People v Miller, 77 AD3d 1386 [4th Dept 2010], lv denied 16 NY3d 701 [2011]; People v Szwalla, 61 AD3d 1289, 1290 [3d Dept 2009]). We too reject it.
In the instant case, the court sufficiently “weighed the RAI against the defense evidence and arguments” and correctly adjudicated defendant a level three offender (see People v Ferrer, 69 AD3d 513, 514 [1st Dept 2010], lv denied 14 NY3d 709 [2010]). The court opted to rely on the RAI only as a starting point and only after hearing oral argument from defendant at a separate hearing regarding the reliability of the Static 99-R versus the RAI. Defendant was given ample opportunity to argue his case both at that hearing and at the SORA hearing, and the court reviewed his extensive submissions.
Although our analysis differs somewhat from that of the court (see People v Larkin, 66 AD3d 592 [1st Dept 2009], lv denied 14 NY3d 704 [2010]), we find that the People met their burden of establishing, by clear and convincing evidence, risk factors bearing a total score of 140 points, which supports a level three adjudication. The court should not have assessed 10 points on the RAI for the victim involved in the earlier offense (see People v Hoffman, 62 AD3d 976 [2d Dept 2009]). The Guidelines provide a category to assess the “number and nature of prior crimes,” and defendant was assessed 30 points on the RAJ for a prior violent sex crime, which sufficiently takes into account the victim of the earlier crime (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 13 [2006]; see People v Mantilla, 70 AD3d 477, 478 [1st Dept 2010], lv denied 15 NY3d 706 [2010]).
It was also error to assess 20 points for the age of one victim. While sworn grand jury testimony is generally reliable (see e.g. People v Bailey 52 AD3d 336 [1st Dept 2008], lv denied 11 NY3d 707 [2008]), in this case, the testifying victim not only failed to state the basis of her knowledge of the other victim’s age, but stated equivocally, 10 years after the offense, that she was “about 16.” As this does not amount to clear and convincing evidence of the victim’s age, 20 points should not have been assessed.
Regarding drug abuse, defendant argues that he had refrained from drug abuse and had completed a six month program, and *31 that various prison disciplinary records showed no tickets for drugs. Defendant contends that this Court has not distinguished between time spent drug-free while incarcerated and time spent drug-free in the community. In fact, this Court has rejected arguments of remoteness where defendant was at liberty for only a short period of time, as a “[djefendant’s abstinence and participation in treatment while he was incarcerated are not necessarily predictive of his behavior when no longer under such supervision” (People v Gonzalez, 48 AD3d 284, 284-285 [1st Dept 2008], lv denied 10 NY3d 711 [2008] [internal quotation marks omitted]). In addition to the Board’s Case Summary, a 2001 Inmate Status Report confirmed that defendant admitted to abusing LSD and alcohol in the past; this amounts to clear and convincing evidence of his drug use. The select disciplinary records on which defendant relies do not conclusively establish that he was no longer abusing drugs.
Thus, while the court should not have assessed 30 of the 170 points and defendant should have been scored 140, he was still correctly designated a level three sex offender.
Accordingly, the order of the Supreme Court, Bronx County (Steven Lloyd Barrett, J.), entered on or about April 1, 2010, which adjudicated defendant a level three sexually violent offender pursuant to the Sex Offender Registration Act (Correction Law art 6-C), should be affirmed, without costs.
Tom, J.E, Saxe and Gische, JJ., concur.
Order, Supreme Court, Bronx County, entered on or about April 1, 2010, affirmed, without costs.

. The rape and sodomy convictions were affirmed by this Court and the Court of Appeals (33 AD3d 363 [1st Dept 2006], affd 8 NY3d 654 [2007]).

. Many of the amendments cited by defendant predate Gravino and North. These include registration duration, amended in January 2006 (Correction Law § 168-h); the creation of additional categories — “sexually violent offender,” “predicate sex offender,” and “sexual predator,” added in March 2002 (Correction Law § 168-a [7]); the ability to petition for relief, amended in January 2006 (Correction Law § 168-o); the requirement to have photographs taken, amended in April 2006 (Correction Law § 168-f); Internet availability of the subdirectory, added in January 2001 (Correction Law § 168-q); the role of the People and the sentencing court in SOBA proceedings, effective January 2000 (Correction Law § 168-d [3]); and the penalties for failing to report, amended in August 2007 (Correction Law § 168-t).