People v Romulus (2020 NY Slip Op 07512)





People v Romulus


2020 NY Slip Op 07512


Decided on December 15, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 15, 2020

Before: Acosta, P.J., Singh, Kennedy, Shulman, JJ. 


Ind No. 3670/15 Appeal No. 12276 Case No. 2018-04186 

[*1]The People of the State of New York, Respondent,
v
Clefrantz Romulus , Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Molly Schindler of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Diana J. Lewis of counsel), for respondent.



Order, Supreme Court, Bronx County (Raymond L. Bruce, J.), entered on or about November 16, 2018, which adjudicated defendant a level two sex offender pursuant to the Sex Offender Registration Act (Correction Law art 6-C), affirmed, without costs.
On this appeal, we are asked to decide whether defendant was properly adjudicated a level two sex offender pursuant to the Sexual Offender Registration Act (SORA) (Correction Law art. 6-C). We find that the SORA court providently exercised its discretion in reducing defendant's designation to risk level two and in declining to further reduce defendant's designation to risk level one. We further find that the facts and circumstances of this case do not warrant a further downward departure from defendant's presumptive sex offender risk assessment pursuant to our interest of justice jurisdiction.
As an initial matter, we agree with our colleagues that the record does not support an assessment of points under the risk factor for a history of drug or alcohol abuse. While defendant had reported to probation officials that he had used marijuana daily for five years, his more recent history reflected a period of prolonged voluntary abstinence and did not support a finding that defendant had a history of substance abuse that would increase his risk of reoffending (see generally People v Palmer, 20 NY3d 373, 376 [2013]). In any event, while we find that defendant should not have been assessed points on this risk factor, a reduction of 15 points does not alter defendant's presumptive risk level two designation.
However, we disagree with our colleagues that a further downward departure is warranted. The Court of Appeals established a three-pronged process for determining whether to permit a downward departure from defendant's presumptive risk level designation (People v Gillotti, 23 NY3d 841, 861 [2014]). First, a court must decide whether the offered mitigating circumstances are "of a kind or to a degree not adequately taken into account by the guidelines" (id.). Second, a court must determine whether a defendant has proven the existence of these circumstances by a preponderance of the evidence (id. at 864). Finally, if a defendant meets the first two prongs, a court can permit a downward departure as a matter of discretion "by weighing the aggravating and mitigating factors to determine whether the totality of the circumstances warrants a departure to avoid an over- or under-assessment of the defendant's dangerousness and risk of sexual recidivism"(id. at 861; see also People v Mirabel, 187 AD3d 514 [1st Dept 2020]; People v Anthony P., 187 AD3d 479 [1st Dept 2020]; People v Aleman, 187 AD3d 482 [1st Dept 2020]; People v Andrew A., 187 AD3d 445 [1st Dept 2020]).
Here, we find that, under the Gillotti rubric, a downward departure is not warranted. Defendant offers alleged mitigating circumstances that include his "nearly [ ] unblemished" criminal history, that there is no "reliable" evidence that he intentionally [*2]targeted a minor, and that this crime is merely "statutory in nature." We do not agree. The record shows that this 27 year-old defendant engaged in nonconsensual sexual intercourse with the victim, who was 14 years old, the only relevant crime considered by the SORA court regarding his risk level designation. Thus, we need not address defendant's lack of criminal record. Additionally, defendant specifically targeted the victim at least four times on the street and on social media. Defendant claimed that the victim first told him she was either 15 or 16 years old, which indicates that he knew she was a minor when he targeted her. Defendant later claimed that the victim first told him she was 19 years old, but this story change is incredible since he twice approached her while she was wearing her school uniform. On one of those occasions, he accosted her while she was walking to a bus stop in her school uniform.
Our colleagues disagree, finding that the mitigating factors cited by defendant were not adequately considered by the SORA court, but they do not articulate how this case meets the criteria articulated by the Court of Appeals in Gillotti. Instead, they emphasize the alleged lack of weight the SORA court afforded to defendant's retained psychiatrist's evaluation, which our colleagues concede is "not technically a mitigating factor." In any event, we need not rely on a defendant's retained psychiatrist when determining a defendant's risk level (People v Ferrer, 69 AD3d 513 [1st Dept 2010], lv denied 14 NY3d 709 [2010]).
Further, even if we were to rely on defendant's psychiatrist, he based his opinion on defendant's statements, and failed to discuss that defendant targeted a 14-year-old child in her school uniform and that defendant admitted this in his plea allocution. More importantly, defendant's retained psychiatrist conducted four separate actuarial tests to calculate defendant's risk of re-offense, three of which placed defendant at low risk. However, the test specifically highlighted by the psychiatrist in his report as "arguably the most validated and thoroughly studied risk assessment instrument [RAI] for sexual recidivism," the Static 99-R, placed defendant at average risk, which the SORA court also designated defendant.
We note that the RAI prepared by the Board of Examiners of Sex Offenders found defendant to be risk level three, meaning a "high risk of repeat offense and a threat to public safety exists." The SORA court weighed the RAI against the psychiatrist's evaluations and defendant's arguments, and properly concluded that defendant had a moderate risk of re-offense so that a downward departure from risk level three to risk level two designation was appropriate.
Our colleagues further contend that there is no evidence that defendant knew that the victim was 14 years old. As stated above, the record evidence shows that he did. In fact, at defendant's plea allocution, he admitted that "on February 4, 2015, when [he] had sexual [*3]intercourse with [the victim], [he] knew she was less than fifteen years old at that time [and that] [s]he was fourteen."
Defendant and our colleagues further attempt to characterize this crime as simply "statutory in nature," but this too is unavailing. While courts have recognized that sexual conduct that was nonconsensual solely by virtue of age may result in an over-assessment in risk level designation, those cases did not involve a defendant who was nearly twice as old as the victim, as in this case (see People v Secor, 171 AD3d 1314, 1315 [3d Dept 2019] [10-year age difference but the victim was about to turn 17, the age of legal consent, and consented to sexual intercourse]; People v Fisher, 177 AD3d 615 [2d Dept 2019] [six-year age difference]; People v Carter, 138 AD3d 706, 707 [2d Dept 2016] [five-year age difference]). Further, the cases that held that a downward departure was warranted involved sexual consent. Here, the record establishes that the sexual activity was nonconsensual and, at times, forceful ("[M]idway through the second encounter . . . she ceased to consent,"; "[T]he complainant in this case testified in the grand jury that she, on several occasions, said no and asked the defendant to stop and that he did not head [sic] her protest of no,"; "[The victim] told him no multiple times and got up and tried to leave. [Defendant] placed his arm in front of the victim which blocked her from going down the stairs . . . . [Defendant] pulled her pants and underwear down, bent her over," and commenced sexual intercourse). In sum, we disagree with our colleagues and find that defendant has not proven the existence of any mitigating factors by a preponderance of the evidence.
Finally, the circumstances here do not mirror the "rare cases in which we should exercise our discretion" in the interest of justice "to depart downward from [a] defendant's presumptive sex offender risk assessment level" (People v Williams, 148 AD3d 540, 540 [1st Dept 2017] [where 30 years after defendant was convicted of the rape and robbery of a 22-year-old woman the court granted a downward departure to risk level two, finding that his pain and mobility problems paired with his completion of significant academic and therapeutic programing "greatly diminish[ed] his likelihood of re-offending"]; see also People v McKelvin, 127 AD3d 440 [1st Dept 2015] [where we exercised our discretion to grant a downward departure after the SORA court found that defendant's mental retardation warranted an upward departure]). The considerations that underpin the above cases are not present here, and while our colleagues disagree, they do not point to any other circumstances warranting a further departure in the exercise of our discretion. Accordingly, a level two risk designation is appropriate, given defendant's average risk of sexual recidivism.
All concur except Acosta P.J., who dissents
in a memorandum as follows:




ACOSTA, P.J. (Dissenting)
 

I agree with the majority [*4]that the record does not support an assessment of points under the risk factor for a history of drug or alcohol abuse. While defendant had reported to probation officials that he had used marijuana daily for five years, his more recent history reflected a period of prolonged voluntary abstinence and did not support a finding that defendant had a history of substance abuse that would increase his risk of reoffending (see generally People v Palmer, 20 NY3d 373, 376 [2013]).
Where I disagree is that in my opinion, the mitigating factors cited by defendant, including the conclusions of the defense psychiatric expert, were not adequately taken into account by the guidelines. A downward departure from the RAI (risk assessment instrument) score is warranted where the defense establishes, by a preponderance of the evidence, mitigating circumstances not taken into account by the RAI, and where the totality of the circumstances demonstrates that the RAI results in an over-assessment of risk of sexual re-offense (see People v Gillotti, 23 NY3d 841, 861, 863 [2014]).
Here, while not technically a mitigating factor, the individual evaluation of defendant by Dr. Richard B. Krueger should be given more weight. Dr. Krueger, the medical director of the Sexual Behavior Clinic of Columbia University and the New York Psychiatric Institute, and one of the foremost experts in the field of sexual recidivism, conducted a four-hour interview and administered four separate tests to calculate defendant's risk of re-offense, three of which placed defendant at low risk. And, although the Static-99R placed defendant at average risk, Dr. Krueger noted that defendant "has learned from the educative effects of his incarceration and this reduces his risk." Based on the interview and testing, Dr. Krueger determined that defendant presented only a low risk of sexual re-offense, that he is not a pedophile, and that his sexual interest is in adult women. Accordingly, Dr. Krueger's expert conclusion that defendant's risk of recidivism is low supports a departure to risk level one.
The majority unfairly suggests that Dr. Krueger's report failed to mention that defendant "targeted a 14-year-old child in her school uniform," citing the plea allocution minutes where the victim's age was discussed. It appears, however, that the plea minutes were not reviewed by Dr. Krueger. What he knew, based in part on the RAI, was that defendant received 20 points for Risk Factor 5 because the victim was between the age of 11 and 16. The Case Summary, which was also reviewed by the doctor, referred to the victim as a 15-year-old. Based on this information, it would make no sense for Dr. Krueger to volunteer, without substantiation, that defendant targeted a 14-year-old in a school uniform.
Moreover, the statutory nature of an offense is a mitigating circumstance that permits a downward departure (People v Soto, 169 AD3d 534 [1st Dept 2019]). My colleagues in the majority suggest that a downward [*5]departure is not appropriate, given the victim's age. However, it bears mentioning that defendant was charged with rape in the second degree and related offenses. He was offered a plea to rape in the third degree, a class E felony, with a sentencing range with a minimum of 1 1/2 years' incarceration followed by 3 years' post-release supervision, and a maximum of 4 years' incarceration followed by 10 years' post-release supervision (Penal Law §§ 70.45[2-a][a]; 70.80[4]). The prosecution, however, determined that such a sentence would be unduly harsh, given defendant's lack of criminal record, the facts of the incident, and defendant's background:
"[T]he People are offering one year jail [pursuant to PL § 70.80 (4)(c)] instead of one and a half to four years . . ., given the nature and circumstances of the crime at issue, statutory rape, and given the history of the defendant, one marijuana ACD from 2014 prior to this arrest, and then on February 8, 2017, an arrest for turnstile jumping, and the character of the defendant, the defense provided us with nine character letters for the defendant, the People recommend that imprisonment is necessary, but it would be unduly harsh for the Court to impose the prescribed sentence and believe the fixed one year is appropriate and warranted under circumstances of this case[] (emphasis added)"
In addition, defendant was assessed 15 points under Risk Factor 14 for lack of community supervision upon his release from jail. However, the lack of supervision was a result of the terms of the plea bargain and reflected the prosecutor's and sentencing court's recognition that probation or parole supervision was not necessary to protect the public safety. While correctly assessed, these points contributed to the RAI's over-assessment of defendant's risk of reoffending.
I also disagree with the majority that we should exercise our discretion only in cases that mirror People v Williams (148 AD3d 540 [1st Dept 2017]) and People v McKelvin (127 AD3d 440 [1st Dept 2015]), as each case presents a different set of circumstances. Here, I think that a downward departure to level one is warranted, in the exercise of our discretion, under all the circumstances.
Even though I believe that defendant poses a low risk of recidivism, I recognize that his community is entitled to protection under the law. A level one designation provides for annual registration by mail for 20 years (as opposed to life for a level two) and in person registration every three years for a new photo (same as for a level two). Although there is no community notification as in level two, members of the public can call the Division of Criminal Justice Services and ask about specific individuals (Corrections Law §§ 168-f, 168-h, 168-p; 168-q).
Last, I believe that this case highlights problems with the RAI. Perhaps it is time for the legislature to update the current RAI in order to incorporate current research on recidivism (see Report on Legislation [*6]by the Criminal Courts Committee, the Criminal Justice Operations Committee, and the Corrections and Community Reentry Committee, New York City Bar, reissued January 2020, at 1 https://s3.amazonaws.com/documents.nycbar.org/files/20072469-SexOffenderRegistrationActReport.pdf ["the current (RAI) employed by the Board is not a valid method to predict . . . likelihood of reoffending"]; see also People v McFarland, 29 Misc 3d 1206 [A] , NY Slip Op 51705 [U], *19 [Sup Ct, NY County 2010] ["The RAI . . . is frozen in time]). 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 15, 2020