People ex rel. Rivera v Superintendent, Woodbourne Corr. Facility (2021 NY Slip Op 07044)





People ex rel. Rivera v Superintendent, Woodbourne Corr. Facility


2021 NY Slip Op 07044


Decided on December 16, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 16, 2021

532347
[*1]The People of the State of New York ex rel. Danny Rivera, Respondent,
v
Superintendent, Woodbourne Correctional Facility, et al., Appellants.

Calendar Date:October 14, 2021

Before:Garry, P.J., Egan Jr., Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Letitia James, Attorney General, Albany (Frank Brady of counsel), for appellants.
The Legal Aid Society, New York City (Kerry Elgarten of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the Supreme Court (Schick, J.), entered November 5, 2020 in Sullivan County, which granted
petitioner's application, in a proceeding pursuant to CPLR
article 70, and directed respondents to release petitioner to parole supervision.
In 1986, petitioner was sentenced to an aggregate prison term of 20 years to life for his convictions of murder in the second degree (two counts), attempted murder in the second degree (two counts) and rape in the first degree. In April 2019, petitioner was granted an open parole release date of May 23, 2019. At his Sex Offender Registration Act (Correction Law art 6-C [hereinafter SORA]) hearing, petitioner was adjudicated a risk level three sexually violent offender. As a result of that designation, pursuant to the Sexual Assault Reform Act
(L 2000, ch 1, as amended by L 2005, ch 544 [hereinafter SARA]), petitioner was prohibited from residing within 1,000 feet of school grounds (see Executive Law § 259-c [14]; Penal Law § 220.00 [14]). Because petitioner was unable to locate housing in New York City that fulfilled the residency requirements imposed by SARA, even with respondents' assistance (see Correction Law § 201 [5]), he remained incarcerated.
In October 2020, petitioner filed the instant petition for a writ of habeas corpus, seeking immediate release from custody based upon his assertion that, because SORA and SARA were enacted after petitioner's commission of his crimes, their application to him violates the Ex Post Facto Clause of the US Constitution (see US Const, art I, § 10). Supreme Court found that the combined effect of SORA and SARA, as applied to him, was punitive in nature and violated the Ex Post Facto Clause. The court ordered respondents to release petitioner to parole supervision, enjoined respondents from applying SARA's residency condition to petitioner and directed respondents to transport petitioner to a New York City homeless shelter for intake. Respondents appeal.[FN1]
Initially, as petitioner was released to parole supervision in March 2021, habeas corpus relief is no longer available to him (see People ex rel. Allen v Yelich, 159 AD3d 1202, 1203 [2018], affd 32 NY3d 1144 [2018]; People ex rel. Turner v Sears, 63 AD3d 1404, 1405 [2009]). "However, appellate courts are empowered to convert a civil proceeding into one which is proper in form under CPLR 103 (c), making whatever order is necessary for its proper prosecution" (People ex rel. Brown v New York State Div. of Parole, 70 NY2d 391, 398 [1987]; see People ex rel. Turner v Sears, 63 AD3d at 1405). Accordingly, we find it appropriate to convert the CPLR article 70 proceeding to a declaratory judgment action (see People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d 187, 196 [2020]; compare People ex rel. Negron v Superintendent, Woodbourne Corr. Facility, 170 AD3d 12, 14 [2019], affd 36 NY3d 32 [2020]).
Petitioner argues that the combined effects of SORA and SARA violate the [*2]Ex Post Facto Clause. It is established law that the retroactive application of the registration and notice requirements of SORA does not violate the Ex Post Facto Clause (see Doe v Pataki, 120 F3d 1263, 1284-1285 [2d Cir 1997], cert denied 522 US 1122 [1998]; People v Parilla, 109 AD3d 20, 24-29 [2013], lv denied 21 NY3d 865 [2013]). Here, the challenge to SORA is made only to the extent that it was the mechanism by which petitioner was classified as a risk level three violent sexual offender, which puts him in the class of individuals that must comply with SARA; petitioner's challenge is in fact focused upon the mandatory parole residency requirement of SARA. Similar challenges have been previously addressed in the First and Second Departments, each of which found no constitutional violation (see Matter of Devine v Annucci, 150 AD3d 1104, 1107 [2017]; Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d 147, 153 [2016], appeal dismissed 29 NY3d 990 [2017]). We do not reach a different result, and thus, we reverse.
The Ex Post Facto Clause "prohibits states from enacting laws that criminalize prior, then-innocent conduct; increase the punishments for past offenses; or eliminate defenses to charges for incidents that preceded the enactment. The prohibition on ex post facto laws applies only to penal statutes; thus, where the challenged statute does not seek to impose a punishment, it does not run afoul of the Ex Post Facto Clause" (Kellogg v Travis, 100 NY2d 407, 410 [2003] [internal citations omitted]). As both SORA and SARA were enacted after petitioner was convicted of his crimes, they may both be considered retrospective.
In determining whether a retrospective statute violates the Ex Post Facto Clause, courts must apply the intent-effects analysis, as articulated by the Supreme Court of the United States in Smith v Doe (538 US 84, 92 [2003]; see Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 153). Under that analysis, a court must "first ascertain whether the [L]egislature intended the statute to impose punishment or to enact a civil regulatory scheme that is nonpunitive," then, if civil proceedings were intended, "examine whether the statutory scheme is so punitive, either in its purpose or effect, that the [s]tate's intention to deem it civil is negated" (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 153; see Smith v Doe, 538 US at 92).
First, "[t]o the extent legislative history exists for SARA, both at the time it was originally enacted and when amended in 2005, it supports a conclusion that it was enacted with the goal of protecting children and not to further punish sex offenders for their prior bad acts" (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 154; see Matter of Devine v Annucci, 150 AD3d at 1107; see also Matter of Khan v Annucci, 186 AD3d 1370, 1373 [2020], lv denied 37 NY3d 903 [2021]). As SARA is [*3]a civil regulatory scheme, the inquiry turns to "whether the statutory scheme is otherwise so punitive in purpose or effect so as to negate the [s]tate's intention to deem it civil" (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 156; see People v Parilla, 109 AD3d at 24).
The Supreme Court of the United States has held that ex post facto claims based on the punitive effect of purportedly civil statutes cannot be construed as "as-applied" challenges (see Seling v Young, 531 US 250, 263 [2001]; see also Does v Wasden, 982 F3d 784, 791 [9th Cir 2020]). "Rather, courts must evaluate a law's punitive effect based on a variety of factors — such as the terms of the statute, the obligations it imposes, and the practical and foreseeable consequences of those obligations — in relation to the statute on its face" (Does v Wasden, 982 F3d at 791; see Seling v Young, 531 US at 263; Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 156). Accordingly, Supreme Court erred by finding SARA to be "unconstitutional as applied to petitioner." We are instead limited to determining whether SARA facially violates the Ex Post Facto Clause. In that respect, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty" (Smith v Doe, 538 US at 92 [internal quotation marks omitted]). The intent-effects analysis involves consideration of the following factors: "(1) does the sanction involve an affirmative disability or restraint?; (2) has the sanction been historically regarded as punishment?; (3) is the sanction imposed only upon a finding of scienter?; (4) does the operation of the sanction promote retribution and deterrence?; (5) is the behavior to which it applies already a crime?; (6) is there an alternative purpose to which the sanction may rationally be connected?; and (7) is the sanction excessive in relation to the alternative purpose?" (People v Parilla, 109 AD3d at 24; see Smith v Doe, 538 US at 97; Kennedy v Mendoza-Martinez, 372 US 144, 168 [1963]; Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 156).
Like the majority in the First Department, we acknowledge that SARA's residency restriction "constitute[s] affirmative restraint[], bear[s] some resemblance to historical criminal punishment, and serve[s] the goal of deterrence" (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 157). However, also like that Court, we must recognize that incarcerated individuals "have no federal or state constitutional rights to be released to parole supervision before serving a full sentence . . . [and] special conditions may be imposed upon a parolee's right to release" (id. at 158-159; see Executive Law § 259-c [2]; People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d at 199). The Board of Parole "is authorized to impose special conditions which must [*4]be satisfied prior to an [incarcerated individual's] release from prison," and "a condition requiring that [an incarcerated individual] secure an approved residence prior to his [or her] release is rational" (Matter of Breeden v Donnelli, 26 AD3d 660, 660-661 [2006]; see People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d at 200-201; Matter of Boss v New York State Div. of Parole, 89 AD3d 1265, 1266 [2011]).
The relationship and proportionality of the mandatory residency condition to its intended purpose have been described as the "most important tests in assessing whether SARA is punitive in effect" (Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 160; see Smith v Doe, 538 US at 102). It has been held that, as SARA's "restrictions are tailored to impose the greatest restrictions on the riskiest sex offenders, . . . they are reasonably proportional to their non-punitive purpose of protecting children" (Wallace v State of New York, 40 F Supp 3d 278, 320 [ED NY 2014]). We are guided and constrained in our review by a recent case concerning individuals in a situation akin to petitioner's, in which the Court of Appeals held that "the temporary confinement of sex offenders in correctional facilities, while on a waiting list for SARA-compliant [New York City Department of Homeless Services] housing, is rationally related to a conceivable, legitimate government purpose of keeping level three sex offenders more than 1,000 feet away from schools," and "[t]he existence of less restrictive methods of monitoring [individuals in these circumstances] during this period does not invalidate the use of correctional facilities" (People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d at 203;[FN2] see Matter of Breeden v Donnelli, 26 AD3d at 661).
In conclusion, "in assessing the constitutionality of a statute, this Court does not review the merits or wisdom of the Legislature's decisions on matters of public policy, and the fact that the restrictions are difficult and cumbersome is not enough to make them unconstitutional. Although one can argue that such laws are too extreme or represent an over-reaction to the fear of sexual abuse of children, they do not violate the [E]x [P]ost [F]acto [C]lause" (People v Parilla, 109 AD3d at 29 [internal citations, quotation marks, brackets and ellipsis omitted]). We are thus both guided and constrained by precedent to find that DOCCS's adherence to its statutory obligation of imposing SARA residency restrictions (see Executive Law § 259-c [14]) does not constitute a violation of the Ex Post Facto Clause (see Matter of Devine v Annucci, 150 AD3d at 1107; Matter of Williams v Department of Corr. & Community Supervision, 136 AD3d at 157).
Egan Jr., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the judgment is reversed, on the law, without costs, petition converted to a declaratory judgment action and it is declared that respondents' [*5]implementation of the Sexual Assault Reform Act does not violate the Ex Post Facto Clause.



Footnotes

Footnote 1: A stay prevented the implementation of Supreme Court's order.

Footnote 2: In both this Court and the Court of Appeals, the efficacy of these severe restraints imposed upon the liberty of petitioner and others in similar circumstances was sharply questioned within concurring and dissenting opinions (see People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d at 218-221, 228 [Rivera, J., dissenting]; People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 174 AD3d 992, 995-998 [2019] [Garry, P.J., concurring], affd 36 NY2d 187 [2020]); nonetheless, the majority in both Courts upheld SARA on that related challenge.